## N. O. WARE AND OTHERS *v.* JAS. H. HOUGHTON, EX.

1. EXECUTORS AND ADMINISTRATORS: SALES BY, WHEN VOID.—Sales by an executor or adminstrator without an order of court, or in a manner not authorized by law, are void, and the distributees or legatees may recover the property from parties holding under such sales.    1 How. Miss. 556; 1 S. & M. 208; 2 ib. 527; 14 ib. 187.

2. SAME: IN SALES BY, NO IMPLIED WARRANTY OF TITLE AS IN OTHER SALES OF PERSONAL PROPERTY.—In a sale of personal property the law implies a warranty of title, but in sales by executors, administrators, and other trustees, there is no such implied warranty, and the maxim of *caveat emptor* applies, both in regard to the title and soundness or quality of the property sold.

3. VENDOR AND VENDEE: VENDEE IN POSSESSION, UNDER COVENANTS OF WARRANTY, CANNOT SET UP WANT OF TITLE AGAINST PAYMENT OF PURCHASE-MONEY.—A vendee of real property, who has protected himself by covenants of warranty, and has been put in possession, cannot set up want of title in the vendor as a defence against the payment of the purchase-money, without showing a previous eviction, unless in cases where there has been fraud. The rule applies to personal as well as to real property, and where there is no warranty, express or implied, and no fraud, the purchaser is without remedy.

4. EXECUTORS AND ADMINISTRATORS: VOID SALES OF: REMEDY OF PURCHASER.—A purchaser of personal property from an executor or administrator under a void order of sale of the Probate Court, may show a previous eviction as a defence against the payment of the purchase-money, or a return, or an offer to return, the property within a reasonable time after discovering the defect of title, thereby rescinding the contract of sale.

5. SALE : RESCISSION OF.—If the purchaser elect to treat the sale as a nullity, he must forthwith return, or tender back the subject-matter of the sale, or give notice to the seller to take it back; if he keeps the property an unreasonable time, or uses it and exercises the dominion of an owner, he cannot treat the sale as void.

6. SAME : SAME : PARTIES MUST BE PLACED IN STATU QUO.—A contract cannot be rescinded *in toto* by one of the parties, where both of them cannot be placed in the same identical situation which they occupied when the sale was made, nor where one of the parties has received a benefit from the contract. A purchaser can rescind a contract of sale by putting the seller *in statu quo*, by an entire surrender of possession and everything he has obtained under the contract.

7. SAME : SAME : WHEN PROPERTY DESTROYED.—If a purchaser, by any cause, becomes unable to return the property before he discovers the defect of title, he is remediless, unless he has protected himself by covenants of warranty; and this rule applies to sales by executors and administrators.

8. PURCHASERS AT JUDICIAL SALES CHARGED WITH NOTICE OF WHAT APPEARS IN THE RECORD.—A party deriving title under or through a judicial proceeding is charged with notice of whatever appears in the record.

9. EXECUTORS AND ADMINISTRATORS : PURCHASER UNDER VOID SALE : EXCUSE FOR OFFER TO RETURN : CASE IN JUDGMENT.—W in 1860 purchased from H, the executor of B, certain slaves. The order of sale was void for want of notice to the proper parties. To an action on the notes given for the purchase-money, W. pleaded that the sale was void, and that he did not discover the defect of title until after the emancipation of the slaves, and that he could not return the same. Held—That the excuse for the failure to return the slaves was insufficient.

ERROR to the Circuit Court of Monroe county. Hon. W. H. Kilpatrick, judge.

*Sale, Phelan* and *Dowd,* for plaintiffs in error.

The following proposition is at this time generally regarded as beyond controversy. A sale of lands by any administrator, for debts, or division, and of personalty *for division* (and especially if already bequeathed away by will), without giving the required notice to all concerned, is *void,* an *does not change the property in the thing sold ;* and it may be pleaded against a note for the purchase-money, even where possession and a deed are given, and no eviction nor dispossession has been suffered.

The Probate Court has not *general jurisdiction* to order sale

for those purposes; and where it is specially conferred by statute, in particular cases, strict compliance with all jurisdictional directions of the enabling act must affirmatively appear on the record, as in proceedings in the Unites States courts.

The following are cases of sale of realty, viz. : *Wiley* v. *Gale*, 2 Stewart, 335 ; *Campbell* v. *Brown*, 6 How. 106.—It is a sale by *a court*, under a *void order*, and *gives no title whatever*. *Puckett* v. *McDonald*, 6 How. 269 ; *Gwin* v. *McCarroll*, 1 S. & M. on p. 368 ; *Laughman* v. *Thompson*, 6 S. & M. 259 ; *Planters' Bank* v. *Johnson*, 7 S. & M. 449 ; *Matlock* v. *Livingston*, 9 S. & M. 489 ; *Commercial Bank Manchester* v. *Martin*, id. 613 ; *Williams* v. *Childress*, 25 Miss. 78 : *Root* v. *McFerrin*, 37 Miss., on pp. 47–8–9.    And there are many others at hand to the same effect, not necessary to be cited.

The following are sales of slaves, and other personal property, some of which decide that an administrator's sale of slaves *bequeathed* or *for division*, are governed *by the same principles as sales of lands*, viz. : *Cable* v. *Martin*, 1 How. 558 ; *Brown* v. *Smith*, 5 How. 387 ; *Baines* v. *McGhee*, 1 S. & M. 208 ; *Worten* v. *Howard*, 2 S. & M. 527 ; *Hull* v. *Clark*, 14 S. & M. 187.    A sale by administrator of bequeathed slaves, for division, is beyond the *usual and general province* of a Probate Court, *as in the case of selling land to pay debts*.    The sale *is void*.    There is *no consideration*, and *the defence may be set up*. Smith, Ch. J. in *Joslin* v. *Caughlin*, 26 Miss. 134.

The same doctrine is held in Kentucky.    *Crawford* v. *Beard*, 4 J. J. Marshall, 187, cited in 3 U. S. Dig. p. 360, sec. 70.

And in Alabama, as to sales of realty (*Wiley* v. *Gayle*, 2 Stew. 335, supra) ; and sales of *personalty* (*Fambro* v. *Gantt*, 12 Ala. on pp. 305–6–7, directly in point).

And in Sup. Court, U. S. (*Ventress* v. *Smith*, 10 Pet. 161.)

And in England.    (*Williams* v. *Paul*, 6 Bingh. 653, in 19 Eng. Com. L. Rep. 192 ; *Simpson* v. *Nicholls*, 3 Mees. & Wel. 240 ; Smith on Contracts, marg. pp. 184–5.)

We know of no cases in conflict with the foregoing, except the same one of *Joslin* v. *Caughlin* (cited above from 26 Miss. 134), when again before the High Court, in 27 Miss. 852, and

30 ditto, 502; and the case of *Bohannon* v. *Madison*, 31 Miss. 348. It is to be remarked that in delivering the opinion of the court in each of these cases, Justice Fisher devotes but a single paragraph to the consideration of the question, without citation of a single authority. It is not understood, therefore, that they have been formally adopted by the court, as furnishing controlling authority for future cases.

The new rule developed in the cases last referred to is to the effect that, although the sale be *absolutely void*, and fails to divest the estate of any title whatever, or to confer any upon the purchaser; and although the purchaser is at any time liable *to be dispossessed* in law or equity at the suit of distributees, as in *Cable* v. *Martin*, 1 How, 558, supra, and *Baines* v. *McGhee*, 1 S. & M. 208, supra; or at the suit of an administrator *de bonis non*, as in *Hull* v. *Clark*, 14 S. & M. 187, supra, and *Ventress* v. *Smith*, 10 Peters, 161, supra; yet he may be subjected to a recovery of the purchase-money, *unless he return the chattel upon discovering the defect in the title, or render a sufficient excuse for not having done so.* The reason assigned for this ruling would seem to limit it to cases of sales by executors and administrators alone. It is, that the purchaser, by retaining possession of the chattel, prevents the executor or administrator from performing his duty in having the property *legally* administered; for a failure to do which *he may be made answerable in damages.* 27 Miss. p. 857. If this reason be based upon considerations of favor to the legatee or distributee, we respectfully submit that it is difficult to conceive why the law should distinguish between his rights and those of any other *cestui que trust*, or those of an individual vendor of his own property. Indeed the former already occupies the advantageous position. He is adequately represented by his chosen trustee. In his own name, or that of the trustee, he may recover the property in a possessory action; or, in the event of its loss, he is protected by an ample bond; while the individual vendor, though equally hindered and obstructed in his rights by the retention, is at the same time without the security of the bond as indemnity against ultimate loss.

But if the reason expressed be founded in tenderness to *the executor himself*, because of his responsibility upon his bond for the maladministration, it would seem that the discrimination is still more inappropriate. He may sue for the property the title to which he has never parted from. Should it be ultimately lost, the law cannot regard him with individual favor. His violation of the requirements of law, and of duty, must be ascribed to either negligence or malpractice. By his voluntary acceptance of the trust he undertakes that he is competent to execute it legally; and the law presumes that he is. So stringent and exacting is this legal presumption, that it has been properly held by the High Court he shall not be allowed for the fees of counsel employed to assist him in discharging his duties. This is a severe, but correct and illustrative test of the measure of competency required of him. As well might the illegal act be protected, favored, or excused, because of the actual (and usual) ignorance of the probate judge who ordered it. Suppose the executor or administrator should wilfully and knowingly sell at private sale, should the law, in mercy to *him*, apply the discrimination, and require a return of the property by the purchaser? And yet a private sale by an executor is not more positively prohibited by statute than one *without notice to those concerned*.

In *Fambro v. Gantt*, supra, 12 Ala. 298, and in the class of cases to which it belongs (which may be identified in principle with *Joslin* v. *Caughlin*, as reported in 26 Miss. 134), the doctrine of *statu quo* is expressly repudiated; and the illegal contracts are relieved against, "not in favor *to the parties*," but *because they violate public policy, and the express requirements of statutes*. (See also *Smith* v. *Mitchell*, 4 Dallas, Penn. Rep. 269.) We respectfully ask especial attention to the references contained in this paragraph, and to the English cases we have cited. Upon this question the Supreme Courts of Alabama and Mississippi have hitherto uniformly held the same doctrine, and the decisions of each have in great measure been founded upon those of the other.

But even if the new rule should be adopted to the full ex-

tent, as settled law, we insist that the excuse set up by the purchaser, in the special plea, for not returning the slaves to the executors, is ample to meet the strictest requirements of the rule. That excuse is the *involuntary emancipation* of the slaves before discovery of the defective title. In *Joslin* v. *Caughlin,* 32 Miss. on p. 106, the present chief-justice (recognizing the late ruling in the case as being the law of *that case*) held that the death of the slave was not a valid excuse for not returning, *if the death be caused by the wrongful act of the purchaser,* thereby deciding *e converso* it *would be* a good excuse, if *not* caused by his fault. So also, by analogy, his involuntary emancipation equally placed it beyond his power to return.

But one cause of demand (and the chief one) to the special plea, sets up that the time elapsed between the sale and the emancipation of the slaves, without discovering the illegality and offering to return, was unreasonable. And as the demurrer was sustained, we presume the Circuit Court so held.

*That* question should not have been decided by the court upon a demurrer. It ought to have been referred, by appropriate pleading, to a jury, who can alone ascertain the special circumstances influencing each case. It is unnecessary here to collate the numerous authorities bearing upon this question. It may be safely stated, and we presume will not be controverted, that the utmost latitude to be claimed for the plaintiffs below, is that where the influencing facts are not disclosed by the pleadings, the jury must find the *facts* and the court will *then* decide the law. Chitty on Bills, 478; *Barnett* v. *Stanton & Pollard,* 2 Ala. on p. 199; 1 Metc. Ky. 88; 1 Head, Tenn. 610.

Upon an issue joined, on a replication that the purchaser might reasonably have discovered the illegality of the sale before the emancipation of the slaves, the proof might well have developed many and various facts in each case, which would materially influence the ruling of the court as to the *reasonableness* of the time. The purchaser might be a skilful lawyer, having ready access to the records of the particular Probate Court. He might be a party defendant in the Probate Court, contesting the petition for a sale, and therefore legally

chargeable with notice of all the proceedings. Or he might be a recently emancipated freedman; or a very ignorant and unlearned man of any class; or residing remote from the county in which the sale was ordered, and transpired. It is judicially known, as a matter of history, that much of the period of time involved was marked by the events of a fierce civil war in which the records of many courts of the State were destroyed, or removed, and free communication by mail or otherwise, between different sections of the country, was effectually closed, or obstructed. Who can say, except *upon proof of the special facts*, that *these* defendants might reasonably have discovered the illegality of the sale prior to the emancipation of the slaves? One purchaser at that sale might well be charged with notice of the illegality, or put upon inquiry; while another purchaser at the same sale might be exonerated upon the special facts of his own case. It is strongly analogous to the question of the reasonableness of time of notice to the endorser of a bill or note dishonored for non-payment, and endorsed either before or after maturity. In an action against the endorser, the day upon which the notice was given may be averred in the declaration, and *under the circumstances* it may be the *proper day* for giving notice. But it may be *apparently* too late. Can *the court* decide, upon demurrer to the declaration, whether the parties resided in the same city, or at a great distance from each other; whether the mails were daily, tri-weekly, weekly, or monthly; whether the medium of transmission was by railroad, steamers, or sailing vessels; or at what hour of the twenty-four the mails were closed at the place whence the notice must be sent; or whether the holder be Jew or Christian, in reference to religious holidays constituting exceptions to the general rule? And yet the ascertainment of some or all of these *facts* may be involved in the question of *the reasonableness of the time*, notwithstanding the apparent significance of the averment in the declaration. See Chitty on Bills, 478, 480; Story on Bills, §§ 286, 288; Story on Prom. Notes, § 327.

In *Crisman* v. *Beasly* (1 S. & M. Ch. 561), the vendee suffered the note to mature, and judgment on it at law, before dis-

covering the illegality of the administrator's sale, and filing his bill in equity for relief; and *that* was held to be reasonable.

But whether it be a question for court or jury, the reasonableness of the time within which a purchaser *may assert his defense*, is not counted against him *until he discovers the defect, whenever* that may be. *Crisman* v. *Beasly*, 1 S. M. Ch. 561, supra; *Barnett* v. *Stanton & Pollard*, 2 Ala. on p. 189; *Veazie* v. *Williams*, 3 Story's Rep. on p. 641; same case in 8 How. U. S. Rep. on p. 158; Story's Eq. Jur. § 1521 *a*, and note 3.

*Davis, Haughton* and *Gholson*, for defendants in error.

The principle set up in the plea is intended to be the same as that laid down by this court in the case of *Joslin* v. *Caughlin*, 27 Miss. R. 852. The causes of demurrer assigned point out the defects in the plea.

In 27 Miss. R. 857; 30 Miss. R. 502 (same case); 31 Miss. 348 (*Bohannon et al.* v. *Madison & Fulton*); 32 Miss. 104 (*Joslin* v. *Caughlin*); 34 Miss. 308 (*Washington et al.* v. *McCaughan*, administrator); 36 Miss. 178 (*Cogan* v. *Frisby*), the following points seem to be well settled, viz.:—

1. A sale of a slave by an executor or administrator, under an order of the Probate Court, *although such order is absolutely void*, and note given for purchase-money, such defect or voidness of order cannot be set up as a defence to an action on the note, whilst defendant is in possession of the slave so purchased.

2. To get the benefit of such defect in the order of the court and in the title to the property, defendant must *return, offer to return*, or *give good and sufficient excuse for not doing so*.

3. Good faith must be observed by the parties to the contract, whether in its consummation, *rescission*, or performance.

4. That a purchaser of a slave under circumstances like the case at the bar, must *promptly return*, or *offer to return*, to the vendor, the slave purchased, on discovery of the irregularity of order of Probate Court, or defect in title.

5. That such discovery and such return, or offer to return, must be in a *reasonable time*.

6.  That due diligence must be used in making such discovery.

8.  That when such discovery is made, the return or offer to return must be instantly made and not delayed.

8.  The rule of "caveat emptor" is applied with great strictness in cases like the one at bar.

There is not such difference between the facts set up in this plea and those appearing at different times in the several stages of the pleadings in the cases referred to, to authorize a disturbance of the decision of the court below.

The sale was made and the note (sued on) executed in the early part of December, 1859; the sale was subsequently reported to the Probate Court and duly confirmed; this suit was brought to the May term, 1866, of the Circuit Court of Monroe county; the emancipation pleaded as a reason for not returning slaves, occurred in 1865—and the *discovery* of defective proceedings in the Probate Court, stated in the plea to have occurred in May, 1866, after the commencement of the suit. The means of discovering such a defect, if any existed, were always in defendant's possession, or at his command; the records of the Probate Court were at all times subject to his inspection; the files of papers connected with the administration were in the office of the Probate clerk; the will of the testator and other papers then show who were the heirs and legatees —yet, with all these means of information at his command, he does nothing, makes no investigation, finds no defects; and none are supposed to exist until counsel's ingenuity is brought to bear—and this not secured until after suit brought. The statements in the plea show the grossest negligence—puts the defendant in default throughout, and if permitted to be used in defence, would work the grossest injustice to plaintiffs, and violate every well-settled principle of law and justice involved as to lapse of time, &c.  See 3 Story Rep. 612–629; 2 Parsons on Contracts, 782; 2 Ala. 181.  See also 1 Parsons on Contracts, 576; 10 S. & Marshall, 480, *Otts* v. *Alderson.*

The plea is otherwise defective in not showing specifically, from the record of the Probate Court and by the record as a

part of the plea, what were the defects and irregularities complained of ; this the plea must show, and must not undertake to adjudge the sufficiency of the record and the questions of law involved—in other words, the plea must state simply facts, and not arguments and legal conclusions.

ELLETT, J., delivered the opinion of the court.

The defendants in error brought an action of debt against the plaintiffs in error, in March, 1866, founded on a bill single, dated December 16, 1859, for $3,890.50, payable twelve months after date.

The defendants pleaded two pleas.

1. As to $1,300, parcel of the sum demanded, payment before suit brought, and

2. As to the residue of the sum demanded, that part of the consideration of said bill single was the purchase of certain slaves of the estate of Brandon, for the price of $2,670, sold by the plaintiffs below as executors as aforesaid, on the 12th of December, 1859, under a supposed order of sale made by the Probate Court of Monroe county, at November term, 1859, for the purpose of an equal division of such slaves among the parties interested therein. That a number of the legatees of said testator interested in said slaves were not summoned or lawfully notified of said proceedings, and did not appear thereto ; wherefore the order of sale, and the sale itself, were void, and did not divest the title of the estate of Brandon to the slaves. That the slaves have become emancipated by the act of the government of the United States, and are free persons, and as such beyond the power of defendants to return, or offer to return, the same to the plaintiffs. That the defendants did not discover the defect of title until after the emancipation of the slaves, and during the term at which the plea was filed, and so they say that the consideration of said bill single has failed as to the said sum of $2,670.

To this plea of failure of consideration the plaintiffs below demurred, and the court sustained the demurrer, and this is the only error complained of.

The grounds relied on as causes of demurrer to the plea, are, mainly, that the defendants do not allege or show any eviction or disturbance of their possession by superior title; that they did not return, or offer to return, the slaves in a reasonable time; that the excuse set out for not returning the slaves is insufficient; and that the defendants did not offer to pay for the use and services of the slaves while in their possession, from the time of sale in December, 1859, to their emancipation.

It has been settled by repeated decisions of this court, that a sale of slaves, by an administrator or executor, at private sale, or in any manner not authorized by law, was void, and that the slaves might be recovered by the distributees, or legatees, from the persons holding under such sales. *Cable* v. *Martin*, 1 How. 556; *Baines* v. *McGee*, 1 S. & M. 208; *Worten* v. *Howard*, 2 S. & M. 527; *Hull* v. *Clark*, 14 S. & M. 187. These were all cases of suit, at law or in equity, by the distributees or legatees, to recover the property wrongfully sold. The first case we find in which the question was made as to the validity of a sale of personal property, where the objection was made by the purchaser, that the order of sale of the property for the purpose of equal division among the heirs, was given by the court, without all the parties interested having been summoned, as required by the statute, is that of *Joslin* v. *Caughlin*, 26 Miss. 134. In that case the purchaser of the property at the sale, set up these facts as a defence against the collection of the purchase-money, and the court said that the decree being void for want of notice to the parties, no title passed by the sale, " and hence the consideration of the note had entirely failed." It is evident that the attention of the court was confined to the question of the invalidity of the order of sale, and was not directed very strongly to the effect which such naked invalidity, standing alone, was entitled to have upon the rights of the parties. Accordingly, when the same case came again before the court, in the following year, on a replication stating that the purchaser still retained the quiet possession of the slave, it was promptly decided that, without having made an offer to return the slave to the plaintiff, the defendants could not resist the payment of the note, notwith-

standing the invalidity of the order of sale. 27 Miss. 852. The case having been again sent back, the defendants rejoined to the replication, that the slave died before the suit was commenced; and the sufficiency of this rejoinder being brought before this court, it was held to be too vague and uncertain to constitute a defence. The defendants, it is said, " were bound either to return the slave *in a reasonable time,* or to show a good excuse for not doing so." *Joslin* v. *Caughlin et al.,* 30 Miss. 502. The case was remanded, and then the defendants amended their answer, by alleging that the slave died before the obligation became due, and before they discovered the illegality of the sale, and therefore could not be returned. To this the plaintiff replied, that the slave came to her death by the ill-treatment, neglect, and violence of the defendants. A demurrer was sustained to this replication, and the case was brought to this court for the fourth time. It was then held that the answer offered no sufficient excuse for the failure to return the slave; and that, upon the pleadings, it appeared that the plaintiff had lost the property by the unjustifiable conduct of the purchaser. " He was bound, said the court, to restore the plaintiff in his rights, before he could set up the defence of failure of title; and he can certainly take no benefit from his failure to do so, when that failure has arisen from an additional wrong." 32 Miss. 104. We have quoted so much from the various decisions in that case, because they contain all that the court has said, at any time, in reference to excuses for not returning the property, and it is clear that the law on that point was not, in that case, made the subject of particular examination or discussion.

In the meantime, in the case of *Bohannon* v. *Madison,* 31 Miss. 348, the rule had been laid down more broadly. It is there said : " By their purchase they acquired possession of the slaves; and if the sale was void they should have instantly returned the property to the executor." " Parties who set up the illegal action of the executor or administrator, as a defence for not performing their contract, ought either to return, or offer to return, the property." And again, in *Washington* v. *McCaughan,* 34 Miss. 304, it was said : " The rule is now firmly

settled in this court, in regard to a sale of personal estate by an administrator, that the purchaser retaining possession, and not offering to restore the property to the administrator, shall not be permitted to resist the payment of the purchase-money on the ground that the sale was invalid."

The general rule of law is, that upon a sale of personal property, the law implies a warranty of title; but it is equally well settled that, in the case of sales by executors, administrators, and other trustees, there is no such implied warranty, and that the maxim, *caveat emptor*, applies in such cases, both in regard to the title and soundness or quality of the property sold. And where the vendee has protected himself by covenants of warranty, and is put in possession, he cannot defend himself against the payment of the purchase-money without a previous eviction, unless in cases where there has been fraud. This rule applies as well to personal as to real property, and where there is no warranty, express or implied, and no fraud, the purchaser is without remedy.

But, in the case of sales of personal property by an executor or administrator, under a void order of the Probate Court, the decisions above quoted give the purchaser a remedy for the failure of title, although there is no warranty, no eviction, and no fraud. This relief is afforded as in cases where there is a warranty of title or soundness, and the purchaser is desirous to rescind the contract *in toto*, on the ground of some defect existing in the title or quality of the property. A purchaser under such circumstances may proceed in two modes: he may keep the property, and defend the action by showing a partial failure of consideration, and a breach of the warranty to that extent; or he may rescind the contract, by returning the property. If the complaint be of the want of title, he must show a previous eviction, or he must return the property. In this case, there being no warranty, the decisions alluded to give the purchaser the right to defend himself against the payment of the purchase-money, by returning, or offering to return, the property, within a reasonable time after discovering the defect of title, and thereupon rescinding the contract of sale. And the question

presented on this record is, whether, in such cases, any excuse will be admitted for not returning the property, and if so, whether the excuse stated in the plea is sufficient.

The rule on this subject appears to be stated in the books without any qualification. Thus, " if the purchaser elect to treat the sale as a nullity, he must forthwith return, or tender back, the subject-matter of the sale, or give notice to the vendor to take it back; for if the purchaser keeps it an unreasonable time, or uses it, and exercises the dominion of an owner over it, he cannot afterwards treat the sale as a void sale, and recover the purchase-money on the ground of failure of consideration. Addison on Con. 273. And he must put the other party in *statu quo*, by an entire surrender of possession, and of everything he has obtained under the contract. *Voorhees* v. *Earl*, 2 Hill, N. Y. 288; 1 Denio, 69. And if one party have already received benefit from the contract, he cannot rescind it wholly, but is put to his action for damages. Story on Con. 1080, § 977. A contract cannot in general be rescinded *in toto*, by one of the parties, where both of them cannot be placed in the identical situation which they occupied when the contract was made. Chitty on Con. 815, 689, 691, 485.

We do not find the doctrine anywhere stated that the purchaser can, in any case, or under any circumstances, rescind the contract, without a return of the property or an offer to return it. The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides. That one party shall be released from his part of the agreeement, and that he shall be excused from making the other party whole, does not seem agreeable to reason or justice. If, on the contrary, a a party, by any cause, becomes unable to return the property before he discovers the defect of title, it would seem more equitable that he should be left to his recourse on his covenants, and, if he has not protected himself by covenants, that he should be without remedy.

In the present case, the purchaser had the possession and use of the property for nearly six years, and until the title was destroyed by act of the government. He had all the beneficial

enjoyment of the property which he could possibly have had if the title under the executor's sale had been perfect.    To allow him now to rescind the sale would be to permit him to retain all the benefit, profit, and advantage of the labor of the slaves for nearly six years without making any compensation.    Such a conclusion would be full of injustice to those interested in the estate.    The means always existed, near at hand, to discover the true state of the title, and a very little diligence would at any moment have disclosed the defect.    If men choose to make large investments of money, without taking any of the ordinary precautions to assure themselves that they are obtaining a good title, courts ought not to lend too indulgent an ear to their complaints, even when they come freshly after the transaction for relief.    But when parties have slept on their rights for over six years; when the statute of limitations would itself have made their title perfect, by cutting off all remedy from those supposed to possess the superior title, they present themselves with no claim to the favorable consideration of a court of justice. The rule of diligence ought to be the more stringent where the means of information are of record in the county, and where the title is deduced under the judgment or decree of a court easy of access, and open at all times for examination.    Indeed it is a familiar general principle, that a party deriving title under or through a judicial proceeding, is charged with notice of whatever appears by the record.    It is not necessary to apply this principle to the present case, for, without it, the long delay of the parties would be sufficient to preclude them from setting up the defence.

We think, therefore, there was no error in sustaining the demurrer to the second plea, and as this is the only error assigned, the judgment will be affirmed.