## John H. Whitworth et. al., v. Davis G. Carter, Admr.

1. COVERTURE AT COMMON LAW.—At common law the contracts of a *feme covert* were, as a general rule, absolutely null and void, *ab initio ;* and this rule applies also in Mississippi, except in so far as validity is imparted to such contracts by statute.

2. THE MARRIED WOMAN'S LAW OF 1839.—Frost v. Doyle, et ux., 7 S. & M., cited as showing the extent to which the act of 1839 modified and limited the rule of the common law.

3. EFFECT OF MISSISSIPPI STATUTES UPON THE COMMON LAW RULE.—The decisions from 1839, adjudicating under the act of that year, and under the amendments of 1846 and 1857, are uniform that these are enabling acts, and that the *feme covert* is

still subject to her common law disabilities, except as to the class and subjects of contracts enumerated in the statutes.

4. DISABILITY OF MARRIED WOMAN TO CONTRACT DEBTS.—A married woman cannot obligate herself by a sealed instrument or otherwise, to pay for property purchased on credit, except as she is specifically empowered to do so by the statute; as for example, to provide for the maintenance of herself and family, education of her children, and improvement of her separate estate. She cannot embark in the hazards of trade or speculation, and is not liable on her obligation to pay for a slave. SEMBLE: That she may buy any species of property for ready money.

5. SURETIES OF MARRIED WOMEN.—Although it is a general rule that the obligation of a surety is accessary to that of the principal, and it is of the essence of the sureties' liability that there be a valid obligation of the principal; yet, if there be no vice in the subject matter of the contract itself, as *mala in se,* or *mala prohibita,* which the courts refuse to recognize, this general rule does not apply. And there being no objection to the subject matter of an undertaking by a *feme covert* and her sureties to pay for a slave, the sureties may, though the principal may not, be held liable.

6. EMANCIPATION NO BREACH OF WARRANTY OF TITLE TO SLAVE WARRANTED A SLAVE FOR LIFE.—It has been so frequently decided in this state that the emancipation of a slave warranted to be a slave for life, is no breach of such warranty, that the subject is no longer open to debate in this court.

7. When a party has been for five years in uninterrupted possession of a slave purchased on credit at a sale made on an order of the probate court, and without making any effort to rescind the sale for irregularity of proceedings in the probate court, or offering to restore the property, and is sued for the purchase money, and the slave has been emancipated by law, it is too late to set up any defect in the proceedings of the probate court in ordering the sale.

Error to the circuit court of Yazoo county. BRADFORD, J.

Defendant in error brought suit in the court below on a promissory note made by Mary R. Whitworth, John H. Whitworth, Walter W. Troup, and Lucien B. Moore. The defendants pleaded, that the note was made by Mary R. Whitworth, a *feme covert*, as principal, and the others as securities, and that the note being void on account of the coverture of the principals, is void, also, as to the surities; that the consideration of the note was the purchase of a slave, and that the consideration has failed on account of its emancipation, and that the consideration of the note was the purchase by Mary B. Whitworth, at an administrator's sale, of a certain slave, that the sale was void, not being made in accordance with law, and that defendants did not know of the defects in the sale until after the emancipation of the slave, and on account thereof, could not return or offer to return the same. The defendant in error demurred to their pleas. The demurrer was sustained, and the plaintiffs in error declining to plead over,

the issue presented by the first plea was submitted to a jury and verdict returned for defendant in error.

The following errors are assigned:

1st. The court erred in sustaining the demurrer to the second plea.

2d. The court erred in sustaining the demurrer to the third plea.

3d. The court erred in sustaining the demurrer to the fourth plea.

5th. The court erred in sustaining the demurrer to the fifth plea.

5th. The court erred in sustaining the demurrer to the sixth plea.

6th. The court erred in sustaining the demurrer to the seventh plea.

*J. M. Acker*, for the plaintiffs in error,

Insisted that the court erred in sustaining the demurrer to the second plea in bar. That plea avers that Mary B. Whitworth, the purchaser, was a *feme covert*, wife of John H. Whitworth. A married woman cannot contract at common law. 1 Parsons, 287; 8 Mass., 99; 13 Mass., 384; 9 Cowen, 230. See, also, 5 East., 607. In Irby v. Pelan [not yet reported], this court decided that a married woman can generally make no contract, and the promises are *prima facie* void. Chitty on Contracts, 176; Clancy on Husband and Wife, 23–54; Chitty on Bills, 16–18; 8 Term R., 545; 2 Kent, 227; Ib., 109. In actions *ex-contractu*, she cannot sue alone at law. 8 Term R., 545; 2 Saunder's Pl., 65. Our statute prescribes the mode in which married women may alienate their property. 23 Miss., 264; 25 Miss., 242. She may execute valid notes for supplies for plantation and slaves, or slaves alone. 12 S. & M., 490. But not for apparel, furniture, etc. 7 S. & M., 68; 32 Miss., 278–9. It is true that our court decided in 30 Miss., 440–441, that the joint note of husband and wife, although void as to the wife, was valid to sustain a mortgage of the wife's property for the husband's debt.

Hence it is insisted that the note here sued on is *void* as to

the *feme covert.* What is the effect of such void note upon the liabilities of the sureties? What becomes of the property? It did not vest in the *feme covert,* because her contract was void. It must still necessarily remain in the administrator, as property unadministered. It may be said that by retaining the property, she ratified the contract. · A *void* contract cannot be ratified. It could not vest in the sureties, because they were not parties to the contract of purchase.

Another difficulty arises. The note of a *feme covert* is void. Her contract is void, and cannot be ratified. She fails to pay, and the administrator wishes to enforce the vendor's lien. He cannot proceed against her, for her note and contract are void. He cannot enforce it against the sureties, for they are not parties to the contract of purchase, and have no interest in the property. Is not the conclusion, then, irresistible, that the property is still in the administrator unadministered. A surety is an accessary to the original debt, and where there is no original debt, there can be no surety. Pothier on Obligations, p. 252, art. 366. A surety *ex vi termini,* means a pledge to do something which another is bound to do. If there is no principal who is bound, there can be no surety; the accessary cannot exist without the principal. See Russ and wife v. Wingate, 30 Miss., 440, 441. What discharges the principal discharges also the surety. Pothier, 259, art. 377. Pothier divides securities into three kinds—conventional, legal, and judicial, p. 272-3. The security in this case is judicial. The debt was not voluntarily made by the administrator, but was under an order of court. . The note was required by law to be made. The order of the probate court required it. The law directed what should be done. It required a sale to be made to a party, capable of buying, capable of making a valid contract, a party who should give security. But in this case the sale was not made to one capable in law to buy, but to a *feme covert,* who was incapable of making a valid purchase, or of giving legal security.

In the case of Russ and wife v. Wingate, the vendor was making a conventional and not a judicial sale. He was not bound by law to take any security. We must conclude that in this case the administrator must look to the character of the other party, and if he sells to a lunatic or infant, or at private sale, or without an order of sale, he cannot claim that the property has been administered upon. So in this case the same result follows, and the property is still in the administrator, or belongs to the estate. Our statute making notes joint and several does not effect the *rights*, but only the remedies of the holder, so that they are not compelled to sue all in the same action. But it did not effect the rights of those who merely became the security. Surety would have a perfect right to plead that he was surety, and that the note was given for a consideration that rendered it wholly void. The contract was not made with the sureties. They only bound themselves for the performance of the contract by the principal contracting party. But she cannot purchase property. 2 Blackstone, 293.

But this is no longer an open question. The supreme court, in Steele v. Pelan [1867, not reported], has decided that the note of a married woman, not for plantation supplies, is a nullity. This case throws the plaintiff on the position that, although the note is void as to the principal (admitted by dismissing as to her), yet it is binding on the other parties, as assimilated to the note of an infant. The analogy is not good. An infant's note is not void, but voidable. He may ratify. A *feme covert* cannot. She cannot ratify that which she cannot make originally.

The case of Smyley v. Head, 2 Richardson S. C. R., 590, appears to militate against this doctrine. It will be seen that the doctrine we contend for is admitted. But it is put upon the ground that the *feme covert's* contract is void as to her, as a mere personal privilege. But we insist that her contracts are void upon principles of public policy. The case of Kimball v. Newell, 7 Hill N. Y. R., 116. This case also gives the same reason, except in the opinion by Justice

Beardsly, and he put the liability of the security on the grounds of estoppel. But we submit that these decisions are not against the plaintiff in error, if such contracts are void upon principles of public policy.

The second and third assignment of errors is embraced in the foregoing arguments. The fourth, fifth, and sixth assignment are intended to raise the questions presented by the fifth, sixth, and seventh pleas, that is, the failure of the consideration for which the writing was executed, resulting from the emancipation of the negro. It is evident that in this sale there was a mutual mistake of the facts. The purchaser would not have purchased had she not believed she was acquiring title to the slave for life.

*Houston & Reynolds*, for defendant in error.

Is the promissory note of a married woman, signed by her as principal, binding upon her sureties? The second, third, and fourth pleas are, that the note sued on was signed by Mr. R. Whitworth as principal, and the other defendants as sureties, that the principal is, and was, at the time of signing, a *feme covert*, that the note being void as to her, is void as to the sureties.

We concede that as a general rule, a married woman cannot make a valid promissory note, that all of her contracts, except such as she is empowered to make by the statute of this state, are void. But the defense set up in these pleas is not alone the invalidity of the note as to Mrs. Whitworth, but, that being void as to her, it is void as to her sureties.

It is true, as a general rule, that a contract void as to the principal, is void also as to the sureties. But a distinction must be drawn between those cases where the contract is extinguished on account of exceptions *personal to the principal* and such as effect the contract itself. In the latter class of cases the sureties are discharged. But in the former class, where the invalidity rests upon reasons *personal to the principal*, the principal acquires a personal defense against the contract, which, notwithstanding, subsists and may charge the sureties.

This question has been repeatedly before the courts of the Union, and uniformly decided adversely to the position assumed by plaintiffs in error. Smyley v. Head, 2 Richardson's So. Car. Law Reports, 590; Kimball v. Newell, 7 Hill N. Y., 116; Meaggs v. Ames, 4 Bingham, 470; Russ v. Wingate, 30 Miss. R., 444–5; 1 Parsons on Note, 244.

We have conceded that the note sued on was void as to Mrs. Whitworth. But under the state of pleadings in this cause, is the note void as to her?

The declaration alleges the coverture of Mrs. Whitworth, and that the note was given by her for a slave purchased at her father's sale, for her own separate use and as her own separate property. The statute clothes a *feme covert* with power to " purchase property, real or personal, with her own money, which she may have at the time of marriage, or which may accrue to her afterwards, and may take conveyance thereof in her own name, and enjoy the same as her separate property." Rev. Code, 336, art. 24.

Under this statute, it is conceded that a married woman may purchase, *with her own money*, property, real or personal. The *capacity to purchase* is given by the statute, and we contend that it is immaterial how the power is exercised, how the purchase is made, whether by cash, by cash and note, or by note alone, that the contract of purchase vests her with title, and if a note is given, that it is binding on her. The object of the statute was to give a *feme covert* power to invest the rents, issues and profits of her property. If, when her separate property breeds her money, she has the power to use it in the purchase of other property, may she not make purchases by her note, and in that way anticipate her money? The high court of this state has so decided. See Ratliff and wife v. Collins, 35 Miss., 581.

But counsel for plaintiffs in error ask the question, if the note is void as to Mrs. Whitworth, she being the purchaser, what becomes of the property? That she acquires no title because her contract of purchase is void, that the sureties on the note acquired none because they did not purchase. That

it is property unadministered, and the title is in defendant in error. To which we answer, First, That we do not concede that the purchase is void, and that Mrs. Whitworth had no power to make the contract sued on. We have endeavored to show that the contract is binding on her. Secondly, That though the note may not be binding on Mrs. Whitworth, yet it does not follow as a necessary sequence that the title to the slave did not vest in her. Suppose the sureties had purchased the slave for Mrs. Whitworth and had the title made to her and had given their notes for the payment of the purchase money, would counsel contend, in such a case, that Mrs. Whitworth acquired no title to the slave? Certainly not, unless they deny her capacity to acquire property in her own right, a question too well settled in this state to be denied. But the case at bar is in effect the same that we have supposed. Conceding that the note as to Mrs. Whitworth is a nullity, it is not her contract, not her note, but that of the other parties thereto, and by its execution she acquired title to the slave. The title was in her, the obligation to pay, on the other parties to the suit.

1st. We insist that the demurrer to the second, third and fourth pleas should have been sustained for another reason. The defendant sets up the coverture of Mrs. Whitworth, that the note was signed by her as principal, and the other defendants as sureties, and that it was given for the purchase of a slave. Every fact presented by the pleas is set forth in the declaration. The defendants should have demurred to the declaration instead of presenting their defense by plea.

2d. The fifth and seventh pleas state that the consideration of the note sued on was the purchase of a certain slave; that it has been freed, and therefore the consideration of the note has failed.

The risk of the destruction of property by the act of the government must follow the title, and the loss fall upon the owner. This question is settled by the opinion of this court in Bradford v. Jenkins, 41 Miss., 328.

3d. The sixth plea states that the note was given for the

purchase of a slave, sold by defendant in error as administrator of Hutcherson, for the purpose of paying the debts of the estate, under an order of the probate court, which was void for want of notice to the parties interested; that they did not know of the defect in the sale until after the emancipation of the slave, and could not now return, or offer to return the same.

We insist: 1st. That the order of sale, because the parties interested were not notified, is not void. When an administrator applies to the probate court to sell personalty for the payment of debts, the statute does not require that the parties in interest should be cited. Rev. Code, 445, art. 86.

2d. If the sale was void and the purchaser failed to obtain title, his remedy was to rescind the contract. To entitle him to do this, he must *immediately* return, or offer to return the property as soon as he discovers the defects in his title.

If they failed immediately to return, or to offer to return, it amounts to a ratification of the contract, and makes them liable for the the purchase money. These views are stated and the question elaborately discussed in the case of Ware v. Houghton & McNary, 41 Miss., 370. The attention of the court is asked to that case, and the authorities therin referred to.

SIMRALL, J.:

This was a suit brought in the circuit court of Monroe county, by Davis G. Carter, administrator, etc., against the plaintiff in error, and Mary R. Whitworth, founded on a writing obligatory. The defendants pleaded payment, and sundry special pleas, the plea of payment was withdrawn. Carter, administrator, demurred to the other pleas, which was sustained, and defendants declining to plead further, judgment final by *nil dicit* was rendered against all the defendants, except Mary R. Whitworth, as to whom the suit was dismissed.

The defendants in the court below, plaintiffs here, assign for error:

1. The decision of the circuit court sustaining the demurrer to their pleas.

2. The second plea is, that the consideration of the writing obligatory, was the purchase by Mary R. Whitworth, of a negro woman, sold by the plaintiff as administrator, etc., and that said Mary was at that time a *feme covert,* wife of John Whitworth.

3. The third plea set up the same facts, with the further averment that said negro woman was not necessary for family supplies, nor to keep up her plantation, nor to protect her separate property.

4. The fourth plea was the same as the two preceding, with the additional allegation, that said Mary R. Whitworth, a *feme covert,* made the writing as principal, and the other defendants as sureties, and was not for family supplies, nor for the purchase of anything necessary to keep up a plantation of a *feme covert,* nor necessary to protect the separate property of a *feme covert.*

5. That the writing obligatory was given for the negro woman, purchased by the said Mary, she being a *feme covert.*

6. Sixth plea, same as the others, with the fact that the slave was emancipated in 1865.

7. Seventh plea, same as last, with the allegation that the proceedings and order of sale by the probate court, were illegal, and no title passed by the sale. Shortly after the sale the war ensued; courts were closed, records moved, and no opportunity to examine and discover defect of title until after May 1st, 1865; that the slave was emancipated, and therefore impossible for purchaser to offer to restore her.

8. Eighth plea, that the writing obligatory was given for the negro, who was emancipated by public acts and authority in 1865.

We have been furnished with very elaborate arguments by the counsel on both sides, on the subject of the power and limitations of married women to make contracts. At common law the contracts of a *feme covert,* except perhaps under a special custom of London, were void.

In Elliot v. Piersol, 1 Peters R., 338, the supreme court states the doctrine in these words: " By the principles of

the common law, a married woman can do no act to bind herself. She is said to be *sub potestate viri*, subject to his will and control. Her acts are not like those of infants' and some other disabled persons, voidable only, but are in general, absolutely null and void, *ab initio*."

Lord Kenyon declared in Clayton v. Adams, 6 T. R., 604: " If any one proposition in the law be more clear than another, it is that an action cannot be brought against a *feme covert*, a court of law cannot get at her property if she have any."

Davis v. Foy, 7 S. & M., 67, is to the same effect. It is quite clear that the writing obligatory is void as to Mrs. Whitworth, unless there be something in our statute law, to impart to it validity. In Davis v. Foy, the court in reaffirming former adjudications, construing the act of 1839, adds: " This act has not the effect to extend the wife's power of contracting or of binding herself or her property—its effect is rather to take away all power of subjecting her separate estate to her contracts, except in the particular mode specified."

Foster v. Doyle et ux., 7 S. & M., 73–75, originating under the same act, bill in equity was brought against husband and wife, to subject her property to the debts contracted for " articles of plantation and household purposes." Sharkey C. J., says that this statute of 1839, was intended to limit the rule, " that a *feme covert* having separate estate, acts with regard to it as a *feme sole*."

If property is settled upon her by will, marriage settlement, or other conveyances, " she is a *feme sole* only so far as the instrument conferring the separate estate constitutes her a *feme sole*, and she is restricted to the particular mode pointed out by the instrument. Doty v. Mitchell, 9 S. & M., 447; David v. Fisk, 9 S. & M., 151 ; Berry v. Bland, 7 S. & M., 83.

In 1849, the husband with the wife's assent, submitted to arbitration a controversy, about her separate property—this was not binding on her. Fort et al. v. Battle, 13 S. & M., 136. Under the act of 1846, the wife is not liable for buildings put up on her lands. Selph v. Howland, 23 Miss. Rep., 266. The lan-

guage of the decisions from 1839 to this time, adjudicating under the acts of 1839, the amendments and enlargements of 1846, and of 1847, are uniform, that these are enabling statutes, that the *feme covert* is still subject to her common law disabilities, except as to the class and subjects of contracts therein enumerated. That if she be the owner of separate property, then she can make certain enumerated contracts, but in every case where she or her estate is sought to be charged, the primary enquiry is, was this a liability which she was authorized by the statute to incur? If not, then she is remitted to her condition at common law, that of absolute disability.

It remains to enquire whether the statute of 1857 confers on Mrs. Whitworth power to make this purchase, and execute the writing obligatory. It is quite plain that it is not embraced in art. 25, Code, 336. The 25th article confers on the wife authority to purchase " property, real or personal," " with her own money, which she may have had at the time of her marriage, or which may have accrued to her afterwards, as revenues of her estate, or otherwise. And she may take conveyance in her own name," etc., etc. This would seem to be a limitation on the 23d article, which recognizes, that " property of whatever kind may accrue to a married woman, by will, descent, distribution, deed of conveyance, or otherwise." It might be claimed, that inasmuch as purchase is one of the modes by which property may accrue to a married woman, like any other purchaser, she may engage to pay the price at a future day. There might be plausibility in this view—but for the after-restriction—that she may purchase with money. To hold that she can obligate herself to pay for property bought on credit, by a sealed instrument, or otherwise, where the suit is at law, on the chose in action, would overturn the beneficent policy of the law, and break down the barriers with which the corpus of her estate is hedged around. Whilst she can provide for the maintenance, comfort, and education of herself and family and for the improvement of her property, she is not permitted to embark

in the hazards of trade or speculations.  For certain enumer-
ated objects, she may spend her entire income, and make
liable the property itself.  Yet, if she proposes to enlarge
her fortune, and add to her property, she can only do so by
paying the ready money.

The counsel for the plaintiffs in error, urge the doctrine,
" that the obligation of the.surety is accessary to the obliga-
tion of some other person, and it is of the essence of the
sureties' liability, that there should be a valid obligation of
the principal."  This is correct, as a general rule, and where
it may have efficacy in its application.  If the vice be in the
subject matter of the contract itself—as if *mala in se* or *mala
prohibita*, such as gaming, and such as are denounced by
morals and public policy—which the courts utterly refuse to
recognize and enforce, the surety may show that these were
never of force, at all, as valid parts.  There is no objection
to the subject matter of this contract.  The sale was such, as
by law, could be made.  The married woman could take the
title and ownership.  There was nothing, either at the com-
mon law, or under our statutes, that would prevent the owner-
ship of a chattel or land, vesting in a *feme covert*. ·The fact
that she was under coverture, which is a disability, personal
to herself, does not relieve the other obligors.  James v.
Fisk, 9 S. & M., 144.   Sessions and wife v. Bacon, 23 Miss.
Rep., 272 ; Russ v. Wingate, 30 Miss. Rep., 445, were cases
where the obligations were held to be of no effect at law, as
to the *feme covert*, but binding on the husband.  In one or
more of these cases, whilst it was asserted that no recovery
could be had at law against the wife ; yet, she had power,
under the statute, to mortgage her separate property to
secure her husband's debt.

On a contract of guaranty, generally, the guarantor incurs
no responsibility, unless the principal is bound.  But as
respects such undertakings, for a married woman, or for an
infant, or other persons under *personal* disability, there is no
doubt the guarantor is liable, though contracting in the char-
acter of surety.   Chitt. Cont., 499 ; Meaggs v. Ames, 4 Bull.,

470. In White v. Cayler, 6 T. R., 176, it was taken for granted, rather than attempted to be proved, that a guarantor or surety would be liable on his contract. Such, also, is the doctrine of the civil law. "If the principal obligation is annulled, on account of some personal exception, such as minority, it would not, in the least, invalidate the sureties' obligation to the creditor; for it was only to make good the obligation of the minor, in case he should be relieved of it, on account of age, that the creditor took the additional security of a surety. Domat b. 3, tit. 4, § v, art. ii; 1 Ev. Pothier Obligations, 237.

It has been so often decided that the emancipation of the slaves (as one of the results of the late war), does not relieve the purchaser from the payment of the price, and is not a breach of the covenant of warranty of title, that it is no longer open to debate in this court. It is, also, equally well settled, by a series of adjudications, that the purchaser cannot defend against the purchase money, on the ground of a failure or defect of title, though the title be attempted to be passed by judicial sales by executors and administrators, which have failed to do so, for want of conformity to law; unless within a reasonable time. there has been a return, or an offer to return the thing bought. The excuse set up in the pleas, to relieve the purchaser from this duty, are not sufficient; there was not the exercise of that promptness and diligence required by law. Josselyn v. Caughlin, 27 Miss., 852; ib. v. ib., 30 Miss. R., 502; ib. v. ib., 34 Miss. R., 308; Bohannan v. Madison, 31 Miss. R., 348; Ware v. Houghton, 41 Miss. R., 381.

In this case, the sale was made on or about 31st March, 1860; suit was brought to May term, 1861; at the same time a plea of payment was filed. On the 17th of November, 1866, the special pleas were put in. The purchaser had opportunity, for a year or more after the sale, to examine the records, for defects in the probate proceedings, and to rescind the sale, for want of title. It is too late; after the slave was emancipated, in 1865, as averred by the plea

(although access to the records was cut off during the war), and when it was impossible to rescind the contract, and put the parties *in statu quo*, to set up this after-discovered defect in the judicial proceedings, as vitiating the title; especially when it is not averred that the party is threatened with suit or eviction.' In this case, the possession was continued, without threat or molestation, for five years, as may be inferred.

We think the demurrer to the pleas was properly sustained. Let the judgment be *Affirmed*.