WILLIAM M. PIPPEN *v.* CHAS. M. WESSON and CAROLINE M. WESSON.

One who contracts by virtue of a power, statutory or otherwise, and who, except by such power, is incapable of contracting, must pursue the power, or such contract will be void; and it must appear in some lawful way, that such one meant to act under the power.

A married woman has no power to contract a personal debt, or to enter into any executory contract, even with the written consent of her husband, unless her separate estate is charged with it, either expressly or by necessary implication arising out of the nature or consideration of the contract, showing that it was for her benefit.

(*Knox* v. *Jordan*, 5 Jones Eq. 177; *Frazier* v. *Brownlow*, 3 Ired. Eq. 257; *Withers* v. *Sparrow*, 66 N. C. Rep. 129, cited and approved.)

This was a CIVIL ACTION, to recover the amount of a bond, tried at August Term, 1875, of the Superior Court of EDGE-COMBE county, before his Honor, Judge *Moore.*

In his complaint, the plaintiff alleged, that the defendants are indebted to him in the sum of twenty-nine hundred and eighty-six dollars and seventy-seven cents, as is evidenced by their bond, executed and delivered on the 24th day of July, 1874, and payable on the 1st day of February, 1875, which said bond is in the following words and figures, to-wit:

"TARBORO, N. C.,
"July 24th, 1874.

"$2,986.77:—On the first day of February next, (1875,)
"we promise to pay W. M. Pippin, or his order, two thou-
"sand nine hundred and eighty-six, 77–100 dollars, for value
"received.

(Signed)            "CHAS. M, WESSON,    (SEAL.)
    "                  "CARRIE M. WESSON, (SEAL.)
"Credit $154.62 and $45.10."

2. That said bond was executed by Caroline M. Wesson,
with the consent of her husband, Chas. M. Wesson, as testi·
fied by his signature to said bond, both assenting thereto at
the same time ; and the said Caroline, signing the same, at
the same time with her husband and at his request, without
the procurement of the plaintiff, or any other person.

Wherefore plaintiff demanded judgment for two thousand
nine hundred and eighty-seven dollars.

The defendants, at the same term, demurred to the com-
plaint of the plaintiff, assigning as grounds for such demurrer,
that the complaint does not state facts sufficient to constitute
a cause of action against the said Caroline M. Wesson. in
that : It does not appear on the face of the complaint, that
the contract specified as being entered into by her, was made
with the written consent of her husband, or for her necessary,
personal expenses, or for the support of her family, or in or-
der to pay her debts existing. before marriage, or that it was
made by her as a free trader, or that the debt, secured by the
note, was specifically charged on her separate estate and pro-
perty, at or before the execution thereof.

Upon consideration, the court sustained the demurrer, and
gave judgment against the plaintiff for costs. From this
judgment, plaintiff appealed.

*Phillips*, for appellant.

1. Before the adoption of the present Constitution, it was recognized as settled law in this State that a wife may, when not restricted by the deed of settlement, with the consent of the trustee, specifically charge her separate estate with her contracts and engagements. *Knox* v. *Jordan*, 5 Jones Eq., 175 ; *Frazier* v. *Brownlow*, 3 Ired. Eq., 237. "But the court in that case seemed unwilling to sanction the doctrine that as to the separate estate of the wife she was to be regarded as a *feme sole* in all respects, as held in England, and also in the State of New York. But however proper this unwillingness of the court to recognize that doctrine might have been at the time of that decision, there can be no reason, since the adoption of our present Constitution, why the English and New York doctrine should not now be followed in our State." *Withers* v. *Sparrow*, 66 N. C. Rep., 138. If the construction of Art. X, sec. 6, of the Const., is, that as to the separate estate of the wife she is to be regarded as a *feme sole*, the effect of such a construction is to make her personally liable at law and to give a remedy at law against her upon such contract as would have formerly been enforced in equity against her separate estate. If, therefore, there is no restriction of her power to make contracts except as to *conveyances with the written* consent of husband, then the marriage act is unconstitutional. The court must reverse *Sparrow* v. *Withers*, or overrule the demurrer.

2. If the effect of Art. X, sec. 6, is not to treat a married woman as a *feme sole* in all respects, with the exception of the restriction of conveyances which requires the written consent of her husband, then, and in that case, the marriage act is an enabling act, and authorizes a *feme covert* to contract in certain cases. Sec. 17, Bat. Rev., 590. And the written consent of the husband is given as testified by his signature to the bond, both assenting thereto at the same time. Here is a joint contract. It is as much the contract of the wife as of the husband, and the presumption is that the written consent of the

husband was given at the time, or at least before the delivery of the bond. It is not inconsistent with the face of the instrument. If the husband was principal and the wife surety, it would be consistent with the face of the paper that the written consent of the husband was not given, for the wife may have signed afterwards as husband's surety. Reverse the case: Suppose the wife is principal and the husband surety, the rule must be different. For by his signing as surety for his wife, he thereby gives his consent, which is in the strongest possible form. But if the court should be of the opinion that it is consistent with the face of the instrument in this case, that Mrs. Wesson signed after that of her husband, then plaintiff insists that in analogy to those cases under the statute of frauds, parol evidence is admissible to show that it was executed at the same time. That the assent of herself and husband to their contract co-existed. The case of *Miller* v. *Irvin,* 1 Dev. & Bat., 103, was the first case under our law which changed the old doctrine laid down in *Wain* v. *Warlters,* Smith's Leading Cases, in our State. In this case it was held that under the act of 1809, "to make valid parol contracts for the sale of land and slaves, it was not required that the consideration of the contract should be set forth in the written memorandum of it. And this case has been acquiesced in as settling the construction of the act, that the consideration of a contract for the sale of land or slaves need not be set forth in the written memorandum of it. *Rice* v. *Carter,* 11 Ired., 298; *Green* v. *Thornton,* 4 Jones Rep., 231. The consideration is no part of a contract, but is an inducement to it. And the same doctrine is laid down in 2 Kent, 613, 614, 12 ed., and numerous cases cited. The authority to the agent who contracts for the sale of goods, need not be in writing. *Ibid.* The statutes of frauds does not require that the authority of the agent contracting, even for the sale of land, should be in writing. *Ibid.*

*Johnstone,* contra.

Married woman secured in all her estate real and personal. Constitution, Article X, sec. 6.

No woman capable of making a contract to affect her real or personal estate, except for her necessary personal expenses, or for the support of the family, or such as may be necessary in order to pay her debts existing before marriage without the written consent of her husband. Battle's Revisal, chap. 69, sec. 17 : *Harris* v. *Jenkins,* 72 N. C. Rep. 183.

The separate estate of a married woman is not liable to her personal engagements generally, but only where the debt is charged specifically upon her separate estate with the concurrence of the trustee if there be one. *Draper* v. *Jordan,* 5 Jones Eq. 175, *Wharton* v. *Malcom,* 6 Jones Eq. 120.

Case of *Wethers, Ex'r.,* v. *Sparow* and wife, 66 N. C. Rep. 129, does not conflict with above. The jury found that the credit was given to the wife, that the trustee assented to the contract, and that the wife expressly contracted on the credit of her separate property.

See case of, *The Cora Exchange Insurance Company* v. *Babcock,* 42 N. Y. 613, 1 Amer. 601. *Kemen* v. *Kuffut,* 64 Missouri 532. (11 Amer. 541 ;) *Philips* v. *Graves,* 22 Ohio p. 371 ; (V. Amer. 675. *Willard* v. *Eurthan,* 15 Gray, (Mass.) 328. *Machatton Brass and Manufacturing Company* v. *Thompson,* 58 N. Y. 80.

RODMAN J. The common law, by which the contract of a married woman was void, continued to be the law in courts of law in this State until the adoption of the Constitution of 1868. In Courts of Equity it was settled that a married woman might have an estate settled to her separate use, and that although she had no power to bind herself personally by a contract, she might specifically charge her separate estate, and Courts of Equity would enforce the charge against the property. But in order that her contract should have the

effect of creating a charge it must refer expressly, and not by implication to the separate estate as the means of payment. *Knox* v. *Jordan*, 5 Jones Ev. 177; *Frazier* v. *Brownlow*, 3 Ired. Eq. 237. The words "not by implication," though found in the decisions, are not to be understood in the strictest sense as excluding necessary implications. *Withers* v. *Sparrow*, 66 N. C. Rep. 129.

The Constitution and subsequent legislation have greatly changed the rights of married women in respect to their property; but they remain as they were, except so far as they have been changed by such legislation expressly or by reasonable implication. The inquiry therefore is, has the Constitution, or the Act of 1871–'72, chap. 193, (Bat. Rev. chap. 69), given to married women the power to make a contract like the one sued on? The contract sued on is a bond for the payment of money, executed by the defendant Wesson and his wife Caroline, the other defendant. It contains no reference to the separate property of the wife. It says "for value received," but of what the value consisted, or by which of the obligors it was received, is not said. It does not appear that the contract was for the benefit of the wife.

In the case of obligors *pleni juris* this would be immaterial. But where one of them has only a limited capacity to contract, the contract must be shown to be within her capacity. One who contracts by virtue of a power, statutory or otherwise, and who, except by such power, is incapable of contracting, must pursue the power, or her contract will be void. And it must appear, in some lawful way, that she meant to act under the power; and that is the reason why there must be a reference to the separate estate and an apparent intent to charge it. It will be seen upon an examination of the legislation referred to, that it by no means converts a married woman into a *feme sole* in respect to her separate property, but that it gives special powers which are carefully limited and defined, and that outside of such powers her disability

remains as at common law.   She has no power to enter into a contract, upon which a personal judgment might be given against her, or by which she might be subjected to arrest.

It is true that when the decisions to which I have referred were made, the separate estate of the wife was a mere equity, the legal estate being vested in a trustee, and that since the constitution of 1864, she has the legal estate to her separate use.   But that change has not removed her legal disabilities to contract, or extend her ability in equity.   Her contract by bond is still void at law, and the courts under their equitable powers will not enforce it against her separate estate, unless the creditor has an equity to have it so enforced; that is to say, unless it was for her benefit.   This is the doctrine of *Yale* v. *Dederer*, 18 N. Y. 265; S. C. 22, N. Y. 450, in which it is held that the contract of a wife as surety for her husband is void at law, and as not being for her benefit, is not supported by any equity and will not be enforced.   This view of the subject was taken in *Owens* v. *Dickerson*, 1 Craig. & Phil. 48.   (Cond. Eng. Ch. Reps.)   It has the advantage of avoiding some difficulties which might arise upon the theory that a wife binds her separate estate under a power.   It would follow from this view, that even if the contract did expressly refer to the separate estate and attempt to charge it, the attempt would be ineffectual, unless supported by the equity that it was for the wife's benefit.   The wife could not charge her separate estate by a contract not for her benefit, except by a direct conveyance to which under our law, her private examination would be necessary.   In the present case it is immaterial which of these two views may be taken.   They lead to the same conclusion.   The contract does not refer to the estate to be charged as it must do, to operate as the execution of a statutory power, nor was it for the wife's benefit, so as to give the creditor an equity.

In addition to the case cited, the following take the same views as we do, as to the effect of statutes giving to married

women separate estates in their property with a limited or general *jus disponandi.* *Jones* v. *Crostwaite,* 17 Iowa 393 ; *Rhodes* v. *Gibbs,* 39 Texas 432 ; *Bibb* v. *Pope,* 43 Ala. 190 ; *Maclay* v. *Love,* 25 Cal. 367 ; *Smith* v. *Greer,* 31 Cal. 476 ; *Montgomery* v. *Sprankle,* 31 Ind. 113 ; *Carpenter* v. *Mitchell,* 50 Ill. 470 ; *Whitworth* v. *Carter,* 43 Miss. 61 ; *DeFries* v. *Conklin,* 22 Mich. 255.

Sec. 6 of Art. X, of the constitution reads as follows : "The real and personal property of any female in this State acquired before marriage, and all property real and personal, to which she may after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised or bequeathed, and with the written assent of her husband conveyed by her as if she were unmarried."

It is contended that when the constitution gave married women separate estates in their property, it gave them by a necessary implication an unrestricted dominion over the property, to bind it directly or indirectly, except when expressly forbidden ; and an unrestricted right to contract, such as a *feme sole* or a man has. We think there is no such grant implied.

The terms " sole and separate estate " had a known and definite meaning in the law when the constitution was framed, and it must be taken that they were used in that instrument in the sense which had been affixed to them by prior decisions of this court. Such an estate had never been held to confer on the married woman an absolute power of disposition over the estate as if she were a *feme sole,* and it was never supposed that by force of having a separate estate, she had a general capacity to contract. The law was that she had such special powers only as were conferred by the deed of settlement, either expressly or by necessary implication. If the intent of the constitution had been such as is contended for, it

would have been superfluous and unnecessary to proceed, as the section does, to give the separate estate special qualities, as that of exemption from the debts of the husband, and to the wife the power to devise and bequeath the property, and to convey it with the written consent of her husband, inasmuch as upon the doctrine contended for, the exemption and the wife's power of disposition would have followed as a necessary incident to the separate estate. That it was thought necessary expressly to give a limited power of disposition, shows clearly that the separate estate given was such as it had previously been defined to be, to which neither an absolute power of disposition, nor the general power to contract, were necessary incidents. The statute was intended to take the place of a deed of settlement, and must be construed as such deeds had been, as conferring on married women no powers beyond those expressly given or implied.

It is contended, however, that a general power to contract, with the written consent of their husbands, is given to married women by section 17, of the marriage act above cited.

We conceive that while it would be beyond the power of the Legislature to destroy or alter the essential qualities of the separate estate given by the constitution, as by giving the personal property to the husband, making the property liable for his debts or by destroying the wife's power of disposition; yet it is within its power to regulate the manner in which the separate estate shall be held, to prescribe what contracts and what dispositions of their estates, other than those specifically authorized by the constitution married women may make, and by what forms and ceremonies all their contracts shall be made and authenticated, and their free consent thereto ascertained. The Legislature may abolish all the incapacities of married women, and give them full power to contract as *femes sole.* The question is, has it done so?

The section referred to reads as follows: "No woman during her coverture shall be capable of making any contract to affect

her real or personal estate, except, &c., without the written con-sent of her husband, unless she be a free trader as hereinafter allowed." By no fair construction can this section be read as enacting that " every married woman shall be capable of making any contract to affect directly or indirectly her estate (which would include every contract whatever) by the written consent of her husband." By using the words " contract to affect her real or personal estate," the draughtsman evidently had in mind the existing law as above stated, that no married woman could make any personal contract, but only one to affect or charge separate estate, and the object was to require the consent of the husband in lieu of the consent of the trustee, which the law required when the separate estate was created by a deed of settlement. The meaning was not that a married woman may make contracts which, by existing law, she had no power to make, but that she shall not make such contracts as by existing law she had power to make, without the consent of her husband. The intent was not to enlarge her special power of contracting into a general power, but to abridge the special power by requiring the husband's consent. This is clearly shown by the negative frame of the section. The meaning contended for would have been expressed nat-urally by affirmative words, directly granting the power, and it would be a most unnatural construction to hold that the mere omission to deny the power to make general personal contracts, which there was no necessity for denying, as it was denied by existing law which was not repealed, was a grant of that power.

By section 26 of the act cited, it is enacted that no convey-ance of her real estate by a married woman not a free trader, shall be valid unless it be proved or acknowledged and her private examination taken as to her free consent. If a mar-ried woman can bind her real estate by an executory contract to pay money, as to which she is not privately examined, the safeguards against conveyances by the undue influence of her

husband provided by this section, would be easily defeated. Her real estate would be liable to sale under execution, and she would thus indirectly convey when she could not directly do so.

As it does not distinctly appear that Mrs. Wesson executed the bond as surety for her husband, we put that out of view. We put our decision on the ground that a married woman has no power to contract a personal debt or to enter into any executory contract, even with the written consent of her husband, unless her separate estate is charged with it, either expressly or by necessary implication arising out of the nature or consideration of the contract, showing that it was for her benefit. Whether the contract would be good if it did expressly charge the separate estate, but was not for the wife's benefit, it is unnecessary to say.

PER CURIAM.                                   Judgment affirmed.