The complaint alleges:
1. That on 1 January, 1886, Julia J. V. Garris, wife of the defendant, for a valuable consideration, executed and delivered her promissory note, under seal, to the plaintiff, wherein she promised to pay the plaintiff, on 1 January, 1888, the sum of $400, with interest at 8 per cent per annum from said 1 January, 1886, and that no part of said indebtedness has been paid.
2. That in 1887 said Julia J. V. Garris died, possessed of real and personal estate, leaving a will, in which her husband, the defendant, was appointed executor of the same, who qualified as such executor in August, 1887, and entered on his duties as such executor, taking said property into his possession, and omits and refuses to pay said debt.
Wherefore, plaintiff demands judgment against defendant for $400, with interest at 8 per cent from 1 January, 1886, and for costs.
The defendant demurred, assigning as ground of demurrer:
"2. That the said Julia J. V. Garris, being a married woman at the time of the execution and delivery of said sealed note, the same was void and not binding on her or her personal representative."
The court overruled the demurrer and granted the defendant (220) leave to answer the complaint. He excepted and took an appeal to this court, but did not prosecute the same. Afterwards he answered, alleging that at the time of the execution of the said alleged note the defendant's testatrix was a married woman; that the consideration of the said alleged note was not for her benefit nor for the benefit of her separate estate; that the payment of said alleged note was not charged, either expressly or by implication, on her separate estate, nor was it executed with the written consent of her husband; that said alleged note was not given for her necessary personal expenses, nor for the support of her family, nor to enable her to pay her debts existing before her marriage.
The plaintiff replied to the answer: "That in the complaint in this action it was alleged that the testatrix of the defendant was a married woman at the time of the execution of said note, and the defendant demurred to said complaint, upon the ground that it did not state facts sufficient to constitute a cause of action, in that it appeared from said complaint that the testatrix of the defendant was a married woman at the time of signing said note; that said demurrer was heard and a judgment was rendered in this cause overruling said demurrer, and the *Page 156 
plaintiff avers that said judgment was rendered upon the sole ground that the defense of coverture was not available to the defendant, and that the plaintiff pleads said judgment as an estoppel."
The court gave judgment as follows:
"This cause coming on to be heard, and the defendant having admitted in open court the execution of the note declared on in the complaint, and that no part of the same has been paid, it is therefore considered and adjudged that the plaintiff, T. M. Baker, recover of the defendant, Jonathan Garris, executor of J. J. V. Garris, the sum of $538.84, with (221) interest at 8 per cent per annum on $400 until paid, and for costs."
The defendant appealed.
On the trial "the plaintiff offered to prove by parol that the judgment of his Honor at October Term, 1888, overruling the demurrer, `was rendered upon the sole ground that the defense of coverture was not available to the defendant.' The defendant objected to this evidence, but it was admitted by the court, and the defendant excepted. It was then admitted by the defendant, subject to said execution, that said judgment was rendered on the sole ground alleged by the plaintiff."
The defendant moved in this Court to dismiss the action, upon the ground that the complaint does not state facts sufficient to constitute a cause of action.
The defendant moves in this Court to dismiss the action, for that the complaint does not state facts sufficient to constitute a cause of action. It appears on the face of the complaint that the defendant's testatrix, a married woman, executed her simple promissory note to the plaintiff in the sum of $400, and that she died "possessed of real and personal estate, leaving a will, in which the defendant was appointed executor." There is an entire absence of any allegation showing that the contract was such as she was by statute competent to make, nor is there the slightest intimation of any circumstances showing that the indebtedness was charged or is chargeable upon her separate estate. Indeed, there is no pretense whatever of such a charge, and the prayer is for a judgment in personam.
It is very clear that, under the numerous decisions of this (222) Court, from Pippen v. Wesson, 74 N.C. 437, down to Flaum v. Wallace, 103 N.C. 296, and subsequent cases, that the complaint is fatally defective, in that it does not set forth a cause of action. It is argued, however, that in certain exceptional instances (as in the case of *Page 157 
a free trader) a married woman may make a legal contract, and therefore the court ought to assume that the contract sued upon is one of that peculiar character. This position is so utterly subversive of every principle of legal presumption that it would seem unnecessary to cite any authority in its refutation. As, however, it appears to be seriously pressed, it may not be improper to make some observations upon the subject.
Very soon after the adoption of the present Constitution, and the passage of what is known as the "Married Woman's Act" (chapter 42 of The Code), it became the duty of this Court to determine the character of the statutory separate estate of a feme covert, and the manner in which it could be charged with her executory contracts. In a few of the States where similar statutes had been passed, it was held that their effect was to remove the common-law disability of coverture, and to enable the wife to contract in all cases as if she were a feme sole, except where expressly prohibited. In a majority of the States the opposite view was taken, and this view, after much deliberation, was adopted by our Court in Pippen v. Wesson, supra. This case settled the fundamental principles of the law of married women in North Carolina in reference to the constitutional and statutory provisions above mentioned, and its authority, so far from being questioned, has been uniformly recognized and approved by the repeated decisions of the Court. The doctrine of the case is well stated by Ruffin, J., in his carefully considered opinion inDougherty v. Sprinkle, 88 N.C. 300, in which that learned justice discusses the manner in which the engagements of married women may be enforced. He says: "Nor was there any change wrought in this particular by the alterations made in our court system under the (223) Constitution of 1868, or by the adoption of the statute known as the Married Woman's Act. It was in reference to these very alterations and the effect of the statute that the Court declared, in Pippen v. Wesson, andHuntley v. Whitner, 77 N.C. 392, that no deviation from the common law had been produced thereby, as respects either the power of a feme covert to contract, the nature of her contract, or the remedy to enforce it; that, as a contract merely, her promise is still as void as it ever was, with no power in any court to proceed to judgment against her in personam; that it was only through the equitable powers of the court that satisfaction of her engagements could be enforced as against her separate estate. . . . The nature of the pleadings is substantially the same as under the former system of our courts, and it is essential, in order to establish a right to a special judgment against her separate estate, that the complaint should show not only that she has such estate, but that her promises are such as, by the statute, she is rendered competent to make. It was for want of just such allegations, and because *Page 158 
the complaint demanded a personal judgment against the feme defendant, inPippen v. Wesson, that the demurrer was sustained and the action was dismissed."
In Pippen v. Wesson the plaintiff sued upon a promissory note signed by the husband and wife, and the coverture appeared upon the face of the complaint. There was, as in our case, no allegation showing that the contract was of such a character as to fall within the exceptions of the statute, nor did there appear any circumstances by which the separate estate was chargeable. The feme defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action, and the Court, after stating that the complaint should have contained the essential allegations above mentioned, proceeds as (224) follows: "In the case of obligors pleni juris this would be immaterial. But where one of them has only a limited capacity to contract, the contract must be shown to be within her capacity. One who contracts by virtue of a power, statutory or otherwise, and who, except by such power, is incapable of contracting, must pursue the power, or her contract will be void."
The demurrer was sustained, and thus we have a case directly in point against the contention of the plaintiff. After this express decision upon the very question before us, it is quite difficult to understand how this Court is at liberty to go to the extraordinary length of presuming the existence of the very circumstances which it has, in the most unequivocal terms, declared essential to be alleged. The cases cited from New York, even if they could be recognized as controlling authorities in this State, do not support the position of the plaintiff. In those cases the coverture did not appear upon the face of the complaint, and, therefore, was not demurrable. Where the question, however, did arise, the Court of Appeals of the State (before the act of 1884, removing the disability of coverture except as to contracts between husband and wife) ruled precisely as this Court did in Pippen v. Wesson. In Broome v. Taylor,76 N. Y., 564, the Court said: "If this complaint had not shown that the defendant Helen was a married woman, it would have been good against her; and in that case, in order to avail herself of the defense of coverture, it would have been necessary for her to set it up in her answer. But the complaint shows that the bond is the obligation of a married woman, and there is no allegation showing that it was given for any purpose that would make it binding upon her. As to her, the bond isprima facie a nullity, and hence the complaint does not show a cause of action against her." In view of these authorities, it cannot, we think, for a moment be questioned that the complaint in this case does not state a cause of action. The proposition is so very plain that nothing but the earnest contention to the contrary would seem to justify this (225) somewhat extended discussion in its support. *Page 159 
It is further insisted, on the authority of Vick v. Pope, 81 N.C. 25;Newhart v. Peters, 80 N.C. 166; Nicholson v. Cox, 83 N.C. 48, andJohnston v. Cochrane, 84 N.C. 446, that coverture must be pleaded. This is undoubtedly true, for where the disability does not appear upon the face of the complaint, the plea must, of course, be by way of answer, as otherwise the fact of coverture can never be known.
In the present case the disability appears from the complaint, and the plea of coverture, even had it been necessary, has, from the beginning, been insisted upon by way of demurrer. We suppose that it will hardly be contended that a demurrer in such a case is not a pleading within the principle of the above-mentioned cases. The Code, secs. 238, 239; Estes' Pleadings, 3068; Oliphant v. Whitney, 34 Cal. 25; Furniss v. Ellis, 2 Breck. Marsh., 14. Now, if no cause of action be stated, it is well settled that this objection and the objection to the jurisdiction may be made either by written demurrer or demurrer ore tenus. "As to the two exceptions specified, there can be," says Merrimon, J., "no waiver, and in these respects objections may be made at any time. In such cases there is an absence of anything to which the jurisdiction of the court can attach." Love v. Commissioners, 64 N.C. 706; Tucker v.Baker, 86 N.C. 1; Johnson v. Finch, 93 N.C. 205. In the face of this very plain declaration of the Court, it is insisted that the defendant can
waive the objection, and that he cannot make it at any time. The manner in which this strange result is reached is said to be by way of estoppel, growing out of a ruling at some previous term, in which the court overruled a demurrer and gave the defendant leave to answer over. The demurrer was written, and the ground assigned was that, as the defendant's testatrix was a married woman at the time of the execution of the note, the same was void and that the plaintiff could not recover. The defendant did not appeal, but answered, setting up the coverture. It is said that this interlocutory judgment amounts (226) to an adjudication, and, therefore, the motion cannot now be insisted upon. In support of this position, we are referred to such cases as Jones v. Thorne, 80 N.C. 72; Sanderson v. Daily, 83 N.C. 67; Mabryv. Henry, ib., 298; Roulhac v. Brown, 87 N.C. 1; Pasour v. Lineberger,90 N.C. 159, and Wingo v. Hooper, 98 N.C. 482. In these cases certain interlocutory orders — such as the appointment of receivers, motions to vacate attachments, orders of arrest, and the like — were held to be res judicata unless affidavits were presented showing additional facts subsequently transpiring. Provisional adjudications of this character are mere incidents to an action, the ultimate rights of the parties being tried upon issues of law or fact raised by the pleadings. Such orders are entirely independent of the general rules of pleading, and it is plain that the cases cited have no application to the question *Page 160 
under consideration. The case of Wilson v. Lineberger, 82 N.C. 412, however, seems to be more in point, but, upon an examination of the opinion, we cannot regard it as authority in the present case. There the parties demurred, it is said, "for want of equity," and after a trial before the jury and a report upon a reference for an account — four terms having elapsed — the defendant moved that the action be dismissed for the same cause. This the court declined, and the defendant appealed. There were several reasons why the order of the court should not have been disturbed, one of which is, that while the power of the judge to thus summarily dispose of actions is well recognized, and its exercise in very clear cases commended, the practice generally is discouraged (Wilsonv. Sykes, 84 N.C. 215), and this Court will not entertain an appeal from a refusal to dismiss. McBryde v. Patterson, 78 N.C. 412. This reason was in itself sufficient to have disposed of the appeal, and is, indeed, mentioned by the Court. But, apart from this, in view (227) of the repeated decisions of this Court that a motion to dismiss upon the grounds mentioned cannot be waived and may be taken at any time, we cannot give the effect contended for to such a merely interlocutory ruling as in this case.
Again, we have held that it is the duty of this Court to inspect the whole record and to pronounce such judgment as in law should be rendered.Thornton v. Brady, 100 N.C. 38. Now, if a complaint does not state a cause of action, this rule must be applied, and this could not be done if the expressions used in Wilson's case are to be followed in all instances. It is very evident that the rule there stated had reference to the practice in the Superior Court alone, and was not intended to apply to motions made in this Court, where the power is universally recognized and acted upon, and this without reference to the ruling below.
It is said that the Court should not dismiss the action upon motion, but that the defect should be taken advantage of by demurrer. If we are not to reject the overwhelming weight of authority to the effect that this complaint does not state facts sufficient to constitute a cause of action, and that the objection cannot be waived and may be made by written demurrer or demurrer ore tenus (Tucker v. Baker, 86 N.C. 1; Pescud v. Hawkins,71 N.C. 299), then it must follow that the suggestion is unfounded. Such a demurrer, written or ore tenus, is as strong a plea of coverture as can well be imagined, and it matters not at what stage of the action it is made nor what other pleas may have been filed. It is very true that if no demurrer had been interposed and the case had been tried upon its merits, the evidence sustaining issues embodying the essential circumstances, the court below (The Code, sec. 273), and even this Court, upon motion, might have allowed an amendment conforming the pleadings to the facts proved, and refused to dismiss. But nothing *Page 161 
of the kind appears here. In fact, the case has never been tried (228) upon its merits, but upon the alleged legal insufficiency of the complaint, and there is, therefore, nothing to show the actual existence of the circumstances necessary to charge the estate.
While this disposes of the appeal, we will add that we are clearly of the opinion that oral testimony is not admissible to show the grounds upon which the preceding judge placed his ruling. The demurrer was in writing, and we cannot look beyond it and the judgment.
The principle which admits such testimony in aid of a record pleaded as an estoppel, where such record fails to disclose the precise point on which the case was decided (as in Yates v. Yates, 81 N.C. 397), has no application to rulings upon written demurrers.
We will also remark that we do not concur in the proposition of the intelligent counsel that an executor cannot plead the coverture of his testatrix. This would be practically charging her estate with debts for which she was not liable in her lifetime. Newhart v. Peters, 80 N.C. 167, simply decides that this plea cannot be interposed by one who has no interest in the subject-matter of the suit and who cannot be affected by its result. The action must be dismissed.