M. M. WITHERS, Exr'x vs. T. W. SPARROW and wife, et al.

The separate estate of a *feme covert*, is chargeable with her contracts, for money borrowed with the assent of her trustee, upon the credit and for the improvement of such estate, although the estate is not charged by, or referred to, in the contract.

The case of *Draper* v. *Jordan*, 5 *Jones' Eq.*, 175, cited and approved.

This was a bill in equity, filed under the former system by the plaintiff as executrix of the will of S. M. Withers against T. W. Sparrow, Martha L. Sparrow, his wife, and James M. Hutchison.

Mrs. Sparrow was entitled to a separate estate in Lancaster District, S. C., and having removed to this State, she, with her husband, filed a petition for the purpose, and obtained the appointment of, the defendant Hutchison, as trustee, in this State.

The cause was regularly transferred, and issues embracing the salient questions of fact in dispute were submitted to the jury at July Special Term 1871, of Mecklenburg Superior Court, His Honor Judge Moore presiding. The facts are sufficiently stated in the opinion of the Court.

His Honor granted a decree in favor of the plaintiff, and directed the *property itself* to be sold, &c.

From this decree the defendants Sparrow and wife appealed.

*J. H. Wilson* for the plaintiff.

Property in the hands of a trustee, for the sole and separate use of a *feme covert*, and subject to her absolute disposal, will be held liable in a Court of Equity, for any debt she may contract, with an understanding, express or implied, that they are

9

to be paid out of such property. *Frazier* v. *Brownlow*, 3 *Ire. Eq.*, 237.

The separate estate of a married woman is not liable to her personal engagements generally, but only when the debt is charged specifically upon her separate estate, with the concurrence of the trustee. *Johnston* v. *Malcolm*, 6 *Jones' Eq.*, 120. *Draper* v. *Jordan*, 5 *Jones' Eq.*, 175.

*Guion, Vance and Dowd* for the defendant.

Every contract of any nature, entered into by a *feme covert*, without the assent of her husband, express or implied, is void. She may not be sued at law on her contracts. If she have a separate estate, before she can charge it at all, the assent of her trustee is necessary, and the English rule in this State, is modified in *Frazier* v. *Brownlow*, 3 *Ire. Eq.*, 237, *Draper* v. *Jordan*, 5 *Jones' Eq.*, 175, *Johnston* v. *Malcolm*, 6 *Jones' Eq.*, 120.

The note or bond of a *feme covert* is not negotiable, for the reason, that from its very nature, it is payable out of a particular fund or estate. Negotiable paper must carry with it a *personal* and certain credit given to the drawer, not confined to anything or fund; it is upon the credit of the *person's* hand, or the *person* who negotiates it. *John Dawkes, and Mary his wife* v. *Lord DeLoraine*, 3 *Wilson*, 207.

In *Francis* v. *Wizzell*, 1 *Madd.*, 258, "That the Court has no power against a *feme covert in personam*; but that if she has separate property, the Court proceeds against that. In all cases the Court must proceed *in rem* against it. There is no case in which the Court had made a personal decree against a *feme covert*, and though she may pledge her separate property, and make it answerable for engagements, yet no decree can be rendered unless the trustees are parties to the suit.

In *Adams on Equity*, marg., p. 45, "Her disability to bind herself or general property, is left untouched; but she may

pledge or bind her separate propety, and the Court may proceed *in rem* against it, though not *in personam* against herself." The rest of the doctrine in *Adams*, is modified in this State by the cases above cited, and the case of *Frazier and Brownlow* mentioned in the note.

See Pearson's views in dissenting opinion in *Harris* v. *Harris*, 7 *Ire. Eq.*, 123.

If she may pledge or bind her property by her contracts, she may specially designate in that contract, what is to be put in pledge or mortgage. She may dispose of the whole, but that does not require that she must dispose of her whole trust estate, at once; she may do so in parts, and at different times, and to different persons. In *Story*, § 1399, "her separate estate will be, in equity, held liable for all the debts, charges, incumbrances and other engagements, which she does expressly, or by implication, charge thereon, for having the absolute power of *disposing of the whole*, she may a *fortiori dispose of a part thereof.*"

The plaintiff in this case cannot take a decree, unless she shows an express purpose to charge the separate estate, and that assented to, by the trustee. The note alone is insufficient in this State, by Frazier and other cases cited above, also in Pearson's dissenting opinion, now the law, in this State.

Accompanying the note, and executed with it, was a written direction to Mr. Hutchison, the trustee, to pay it out of the South Carolina trust money, when it should be received. To this he assented, and the South Carolina trustee, had also agreed to the same disposition of the funds, in his hands. That fund has not yet been received, and by the case in 3d Wilson, the debt is not payable, as yet, by trustee.

The evidence discloses, that Mr. Withers in lending the money, looked *solely* to the South Carolina fund for repayment, that he took as his security, and if that has proved insolvent, it is his misfortune, and he stands, as very many others have found themselves, as regards their securities.

The judge rendered his decree on the ground of a general equity. That there was a lien, or that plaintiff had a right to pursue the land improved by the investment of the money he had loaned to Mr. Sparrow, and for which in the first instance he had taken his note.

In this case, however, there is no rule in equity, justifying such pursuit. No fraud is alleged; no trust fund has been charged by a breach of trust; nothing converted by the trustee, and no room is afforded for raising an implied trust. "Express trusts are raised and created by the acts of the parties, either by word or writing, but an implied trust is never raised, unless taking all the circumstances together, that is the fair and reasonable interpretation of their acts and transactions." *Story's Eq.*, § 1195.

Now the words, writings, acts and transactions of these parties expressly rebut all idea, that the property at Davidson College, was, in any way, to be bound for the debt.

In this State, no lien for the purchase-money itself, much less will there be a lien for money applied to the improvement of the land. *Campbell* v. *Drake*, 4 *Ire. Eq.*, 94.

*W. H. Bailey* (representing the children) submitted the following brief :

I. It is submitted that the whole current of American authorities, shows, that a married woman, cannot, in any manner, charge her separate estate, unless the instrument creating the estate, also confers in terms, the power.

Her common law incapacity, remains, unless removed by a power.

Such was the doctrine held by chancellor *Kent*, in *Methodist Church* v. *Jacqaes*, 3 *Johns, Ch. Rep.* 78, a decision which has been cited and approved in many other States.

The same doctrine prevails in *South Carolina. Ewing* v. *Smith*, 3 *Desaussure*, 417, on appeal, reversing the Chancellor,

which was re-affirmed in *Reid* v. *Lamar,* 1 *Strob. Eq.,* 27. *Calhoun* v. *Calhoun,* 2 *Strob. Eq.,* 331—also, in *New York. L'Amoroux* v. *Van Ransellaer,* 1 *Barb. Ch.,* at *p.* 37., *in Penn. Rogers* v. *Smith,* 4 *Barr,* 92; *in Tenn., Morgan* v. *Elam,* 4 *Yerg.,* 375; *in Miss., Doty* v. *Mitchell,* 9 *Sm. & M.,* 435; *Montgomery* v. *Agricultural Bank,* 10 *Ibid,* 567; *in Texas, Magee* v. *White,* 23 *Texas,* 180; *vide* also, dissenting opinion of Pearson, J. *Harriss* v. *Harris,* 7 *Ired. Eq.,* 111; *in Virginia, Williamson* v. *Beckham,* 8 *Leigh,* 20; *in Rhode Island, Metcalf* v. *Cook,* 2 *R. I.,* 355; *in Maryland, Tarr* v. *Williams,* 4 *Md. Ch. Decisions,* 68. *Williamson* v. *Donaldson, Ibid,* 414.

II. If, on the contrary, the doctrine of the English Courts is the true one, then as it proceeds on the idea that *quoad* her separate estate, she is sole, all the incidents appertaining to an estate held by a *feme sole* must follow : and hence she is entitled (1) to a homestead, it being a pure trust.   (2.) And such homestead is no more liable for the plaintiff's debt, (a mere loan,) than any other homestead would be.

It is not the purchase money, as the estate, had already been purchased.

III.   Mrs. Sparrow, as expressly shown by the pleadings, has but a life estate ; and as her children are not made parties (1) no decree can be made affecting the remainder limited to them, (2) and the doctrine held in some Courts that a *feme covert* can charge her separate estate, being a creature of equity, should be moulded to suit the convenience of mankind, and should be confined, it is submitted, to cases where there is an unlimited *jus disponendi.*

IV.   I submit that the doctrine of the English Courts even, is only applicable where a separate estate is created—a *naked* estate, if I may coin an expression—without restrictive or explanatory expressions, accompanying its creation.

The doctrine is based upon the execution of a power—"implied power"—as the present Chief Justice puts it in *Harris* v. *Harris,* cited *supra.*

The learned STORY thus explains the principles of the English doctrine:

" But, in the second place, her separate estate will, in equity, be held liable for all the debts, charges, encumberances and other engagements, which she does expressly, or by implication, charge thereon ; for, having the absolute power of disposing of the whole, she may, *a fortiori*, dispose of a part thereof. Her agreement, however, creating the charge, is not, (it has been said,) properly speaking, an obligatory contract ; for, as a *feme covert*, she is incapable of contracting ; but is rather an appointment out of her separate estate. The power of appointment is incident to the power of enjoyment of her separate property ; and every security thereon, executed by her, is to be deemed an appointment, *pro tanto*, of her separate estate." *Story Eq. Juris*, 2nd Vol., § 1399. *Vide* also same work, § 1400, at page 875. Also *ibid*, § 1401, at pages 879–880.

It is now settled in England, by the leading case of *Tullett* v. *Armstrong*, 1 *Beavan, at p.* 32. [17 *Eng. Ch. Rep.* Affirmed on appeal by Lord Cottenham, 4 *Myl. and Cr.* 377.]

" That, in respect of such separate estate, she is by this court considered as a *feme sole*, although *covert*. Her faculties as such, and the nature and extent of them, are to be *collected from the terms* in which the gift is made to her, and will be supported by this Court for her protection."

So both the nature and extent of the estate and its incidents, amongst which, is the restraint against anticipation, are to be collected from the creating instrument.

There need not be express words to create a restraint against anticipation, but the intention must be clear. *Sturgis* v. *Corp*, 13 *Ves.*, 190.

If a separate estate is created, the power of alienation follows as incident ; but if a clause of restraint be inserted, then the *feme* is debarred. Why ?

There can be but one answer. As it depends upon whether the settlor shall, or shall not, add something to, and thereby

qualify the general limitation, the creation of such restraint depends, solely, upon his will.

His will is his intention.

If, then, the settlor declares that the *feme* shall not anticipate, she cannot, because he so wills and intends it.

If he adds such expressions as indicate that his intent was to restrain anticipation, as clearly, as if expressed in so many words, why not give like effect to them? As, in our case, to the words "support and maintenance."

If, therefore, words and expressions are added to the estate, which are inconsistent with the disposal or charging thereof, then the power, which would otherwise be implied, is negatived.

In our case, it appears from the report of the Commissioner to the Court of Equity, in South Carolina, which was confirmed and a decree passed in accordance therewith, [Vide, page 16, of the transcript,] that John Stewart, by his will, settled the estate " to the sole and separate use, support and maintenance" of Mrs. Sparrow for life, and then over.

Now, I respectfully submit, that the retention of the property unimpaired was made by the testator *parcel of the estate itself ;* and no power to sell or charge can be implied against the expressions " support and maintenance," even according to the stern doctrine of the English Courts.

The power, if implied, must extend to the whole estate, and thus the "support and maintenance" by its exercise, would be abridged or destroyed.

V.   It is further submitted, that as the separate estate was created by the will of John Stewart, made, published and proved in South Carolina, where Mrs. Sparrow then had her matrimonial domicil, and as the fund consisted of both real and personal estate, the law governing the rights and obligations of the *feme*, touching such separate estate, is the law of South Carolina, the *lex rei sitae*, and the law of the matrimonial domicil.

The interpretation of a will made in another State must be determined according to the laws of that State.—*Knight* v.

*Wall,* 2 *Dev. & Batt.,* 125. Vide also *Morrow* v. *Alexander,* 2 *Ired.,* 388.

I submit that the principle, here contended for, was substantially decided in the case of *McLean* v. *Hardin,* 3 *Jon. Eq.,* 294, and the case of *Moye* v. *May,* there cited.

And, it is fully settled, that after the rights of the *feme* have once attached under the law of the matrimonial domicil, a change of domicil will not have the effect to divest them or change their character.—*Beard* v. *Basye,* 7 *B. Mon.,* 133 at p. 141. *Doss* v. *Campbell,* 19 Ala., 590.

If I am right in this position, then according to the law of South Carolina, as shown by the cases of *Ewing* v. *Smith, Reid* v. *Lamar,* and *Calhoun* v. *Calhoun,* cited *supra,* Mrs. Sparrow had *no power* to charge her separate estate—if the law of South Carolina be treated as a fact, it formed (if otherwise than stated) an essential element of the plaintiff's case, which she has failed to establish :—*quacunque via data,* the bill should be dismissed.

BOYDEN, J. This was an original bill in equity, decided in the Court below, and an appeal taken by the defendant to this Court. The object of the bill was to subject the separate estate of the *feme* defendant, to the payment of a sum of money, alleged to have been borrowed by the wife, with the assent of her trustee, upon the credit and for the improvement of her separate estate.

There was some conflict in the evidence in regard to the loan of the money by plaintiff's intestate to the *feme* defendant, and to enlighten the conscience of the Court, upon this matter, the following issue was submitted to a jury, to-wit : "Was the debt in the pleadings described, contracted on the part of T. W. Sparrow and wife M. L. Sparrow, with the plaintiff's intestate, based on the credit of the trust estate of the *feme* defendant, with the consent of the trustee, James M. Hutchison ?" Upon the trial of the above issue, His Hon-

or gave the following instructions to the jury, to-wit : "That before the jury could find the issue in favor of the plaintiff, she must satisfy them by a preponderance of evidence :

*First.* That at the time of the contract, the credit was given to the wife.

*Second.* That the trustee assented to the contract.

· *Third.* That the wife expressly contracted on the credit of her separate property, and that before she could have a verdict in her favor, the jury must find that the money was loaned for the purpose, and with the assent of the wife and her trustee, and actually invested in improvements on the trust estate." Upon this issue, with the above instructions, the jury found in favor of the plaintiff, as to the note for nine hundred and ninety-six dollars and thirty-six cents.

The separate estate of the *feme* defendant was settled upon her, in South Carolina; her original trustee residing in that State. The *feme* defendant and her husband removed a portion of the funds of the *feme covert* to North Carolina, and petitioned the Court of Equity for the county of Mecklenburg, for the appointment of a trustee, for the *femé*, which was ordered, and the defendant, James M. Hutchison was appointed, and accepted the trust. The defendants afterwards filed their petition in the same Court of Equity, praying for an order to permit the trustee of the *feme* petitioner to invest a portion of the funds of her separate estate, in lands situated in Iredell and Mecklenburg counties, and a decree was made to that effect ; the lands accordingly were purchased with the trust funds, and the Court further ordered, that the sum of fifteen hundred dollars of the trust funds might be expended in improving the lands at Davidson College, so as aforesaid, purchased.

That after this decree, the *feme* defendant, with the assent of her trustee, James M. Hutchison,.borrowed of the plaintiff's intestate the money now in controversy, and expended the same, in permanent improvements on the land at David-

son College, and the *feme* defendant and her family are now in the occupation and enjoyment of these improvements, which are estimated to be worth more than three thousand dollars.

Upon this state of facts, His Honor below, declared the separate estate of the *feme*, liable, for the payment of the money thus borrowed and expended, and ordered a sale thereof, unless, before a day fixed in said decree, the money should be paid by the defendants. The question for this Court is, "shall this decree of His Honor below stand, or shall it be reversed for error in subjecting the separate state of the *feme* defendant, to the payment of the debts, due plaintiff's intestate ?"

The law in such a case, in regard to such a settlement made in our State, must be taken as settled. In the case of *Draper Knox & Co.* v. *Jordan*, 5 *Jones' Equity*, 175, His Honor, Judge Manly, in delivering the opinion of the Court, in that case says: "We recognize as settled law, the principle upon which the case of *Frazier* v. *Brownlow* stands, viz: that, a wife may, when not restrained by the deed of settlement, with the concurrence of the trustee, specifically [charge her separate estate, with her contracts and engagements."

But the Court in that case seemed unwilling to sanction the doctrine, that as to the separate estate of the wife, she was to be regarded as a *feme* sole in all respects, as held in England and also in the State of New York. But however proper, this unwillingness of the Court to recognize that doctrine, might have been at the time of that decision, there can be no reason since the adoption of our present Constitution, why the English and New York doctrine should not now be followed in our State. It seems to be a general rule, that marriage contracts and settlements, as well as other contracts, are governed by the *lex loci contractus*.

Mr. Chief Justice Parker, in the case of *Blanchard* v. *Russell*, 13 *Mass. Rep.*, 134, remarks that, "the laws of any State cannot, by any inherent authority, be entitled to respect, extraterritorially, or beyond the jurisdiction of the State that en-

acts them, is the necessary result of the independence of distinct sovereignties. But that the courtesy, comity, or mutual convenience of nations, amongst which, commerce has introduced so great an intercourse, has sanctioned the admission and operation of foreign laws, relative to contracts." So that it is now a principle generally received, that contracts are to be governed by the laws of the State, in which they are made.

This we consider the settled law of our State, and we hold that at least so far as the *limitations* of the estate are concerned, the *lex loci contractus* must prevail.

The settlement by its terms, limited the estate to the wife for life, and then over to such children as she might leave surviving, at her death. There were no words in the settlement denying to the *feme*, the right to charge her estate, but it is said that the decisions of the Courts in South Carolina are to the effect, that under such a contract the wife cannot charge her estate. But however that may be, it is not necessary for this Court to decide ; as this case turns upon altogether a different question. And that is this : the husband and wife and her trustee, file their petition in the Court of Equity for the county of Mecklenburg, praying for a decree allowing a trustee to purchase and to invest a portion of the trust funds, in real estate in Iredell and Mecklenburg counties, and to expend thereon, in permanent improvements, $1,500. The trustee not having the money in hand of the trust estate, to make the improvements, the *feme* defendant and her husband, with the concurrence of the trustee, borrowed the money to make the improvements authorized by the decree, and actually expended the same in erecting buildings, and other improvements estimated to be worth much more than the sum allowed to be expended, and all of which are now in the occupation and enjoyment of the *feme* defendant and her family, so the question is, shall her separate estate, to-wit : her life estate therein be held liable for the money thus borrowed and expended. It would seem that the bare statement of the case, without refer-

ence to authorities, would be sufficient, for an affirmative answer. The law in this regard in our State, we consider fully settled by the authorities cited. No one could doubt, that under the decree, if the trustee had happened to have had the money in hand of the trust estate, the expenditure would have been a proper one. Upon what principle, then can it be contended that the plaintiff's intestate, who had loaned the fund thus to be expended, and when the jury had found, not only, that the funds had been borrowed, but actually expended as allowed, should not be paid out of the *feme's* estate ? We think, that, by the principles and rules of equity, not only as administered in our State, but as far as we are aware in South Carolina, and in every other country where our noble system of equity prevails, the estate of the *feme* would be held liable, for the payment of a debt, in a like case.

The decision of His Honor below, declaring the separate estate of the *feme* bound for the payment of the debt, is affirmed, but the decree must be modified, so as only to subject the life estate of the *feme*, to sale.

This will be certified, that the decree below may be modified, in accordance with this opinion.