A. BRINKLEY & CO. v. J. W. BALLANCE and Wife, M. A. Ballance, and Others.

(Decided April 17, 1900.)

*Married Woman's Liability on Contract—Written Consent of Husband, When Necessary—When Not—What Property Liable—The Code, Section 1826.*

1. A married woman, who is not a "free-trader," is liable in respect to her separate personal property for contracts made with the written consent of her husband.

2. Such consent is not necessary, where her indebtedness is incurred for necessary personal expenses, for support of her family, or to pay her ante-nuptial debts.

3. Such consent may be given in different ways by the husband, as by his signing the order for goods jointly with her, by attesting her signature, with his name as witness, by a letter urging the credit to be given her, and offering inducements to the creditor—all equally as efficacious as a formal written assent signed by him.

CIVIL ACTION for goods furnished the *feme* defendant, M. A. Ballance, tried before *Hoke, J.,* at Superior Court of BURKE County, Spring Term, 1899.

The defendant Mrs. M. A. Ballance conducted a mercantile business at Lewiston, N. C., in 1893, under the name of "Ballance & Co.," her husband, who was insolvent, being her business manager. She contracted a debt with the plaintiff of $334.01, for goods sold and delivered upon written order, and this action is brought to enforce payment out of her separate estate.

The order was signed Ballance & Co., by J. W. Ballance, and is copied in the opinion. The point involved is whether this was a sufficient written consent signed by the husband, required by The Code, sec. 1826, to render her separate estate

liable. His Honor intimated an opinion, that in no aspect of the evidence could any recovery be had as to any of defendants other than J. W. Ballance; in deference to said intimation, the plaintiffs entered a *non pros.* as to all defendants except J. W. Ballance, and the jury having found the issue against him, judgment was rendered against him for $334.01. The plaintiffs excepted to the ruling of his Honor, and appealed.

*Mr. Francis D. Winston,* for appellant.
*Mr. R. B. Peebles,* for appellee.

CLARK, J. This case in its facts is an almost exact duplicate of *Bales v. Sultan,* 117 N. C., 94. The *feme* defendant was doing a mercantile business in 1893, under the style of Ballance & Co.—J. W. Ballance, her husband, the other defendant, being the manager in active charge. It is alleged in the complaint, and admitted in the answer, that the said firm (the wife) contracted with plaintiffs the indebtedness sued for of $334, between January 1, 1893, and August 26, 1893, and that on February 9, 1893, her husband wrote the following letter to the plaintiff: "Gentlemen:—Yours to hand, and in reply would say that our stock of goods is worth $6,000, and we owe $1,500. We own real estate worth $4,000, unincumbered. We thought we gave these points to your young man, and we also thought the writer was too well known here and in Norfolk to need much reference, as he did business here for many years, pleased the people and made money. I bought these goods because I especially needed them Saturday. If you wish to ship them, and can put them here by Saturday noon, you can do so. Otherwise, I do not want them. Respectfully, Ballance & Co., by J. W. Ballance."

The answer, it is true, denies that the legal effect of this letter was the written consent of the husband, and further avers that the goods so bought have long since been paid for, but payment is a matter to be proved by the defendant, and no evidence was introduced tending to prove it. The complaint avers that all of the account now due was purchased, relying upon said letter as the husband's written consent. On the contrary, at the close of the plaintiff's evidence "the Court intimated that in no aspect of the evidence could there be a recovery had of *any* personal judgment against the *feme* defendant, nor against any separate estate, *real or personal,* of which she was seized or possessed."

The Code, sec. 1826, provides that no married woman not a free trader, shall make any contract to affect her real or personal estate without the written consent of her husband, except in three instances specified, to-wit, for her necessary personal expenses, for support of her family, or to pay her ante-nuptial debts. It is not contended that the contract for the purchase of these goods was for the support of the family, though the husband was insolvent, and the family was largely supported from the store. Hence the case does not come within the classes dispensing with the necessity of the husband's written consent, as in *Bazemore v. Mountain,* 121 N. C., 59, and S. C., at this term. The sole question here is whether the letter above set out is a written consent of the husband for the purchase of these goods from the plaintiffs. An examination of it will show that on its face it is an order of goods by the husband as agent for his wife, and there is not only his consent thereto by making the order, but his hearty concurrence by giving a schedule of the property, real and personal, owned by the wife, for she constituted the firm, and an appeal to his own personal standing in Norfolk as a reason why the goods should be shipped. Could there be a

more explicit consent than a request to ship the goods because of "the writer's" good standing? It does not appear that any part of the bill of goods, the purchase of which is admitted, was bought at any other time, but, if this had been shown, it was error to hold that "in no aspect of the case could there be *any* recovery against the *feme* defendant, nor against her property, real or personal." The case of *Bates v. Sultan, supra,* is too recent to permit of any discussion whether the letter of February 9, 1893, amounted to a written consent of the husband. The opinion of MONTGOMERY, J., in that case has been cited and recognized as authority in *Bank v. Ireland,* 122 N. C., 571; in *Walton v. Bristol,* 125 N. C., 419, and again at this term by FURCHES, J., in *Jennings v. Hinton.*

At this term in *Jennings v. Hinton* it was properly held that a husband witnessing a deed of his wife was a sufficient written assent to her making such deed. The Code, sec. 1826, requires the written consent of the husband to validate his wife's contract (except in those cases in which his consent is unnecessary). Certainly then his writing for the goods, giving a schedule of the real and personal property owned by the firm (his wife), and appealing to his personal standing why the goods should be shipped, and using the pronouns "he" and "I" is as full consent as his signature as a witness to a deed by his wife would have been, or as the letter of the husband in *Bates v. Sultan, supra.* An examination of the Constitution, Art. X, sec. 6, and of the statute, Code, 1826, shows no foundation for the "charging" of the wife's property as laid down in some decisions of a former Court. The Constitution requires only the written assent of the husband to "conveyances," and sec. 1826 requires only the written consent of the husband to contracts affecting the wife's "real or personal" estate, in certain cases, dispensing with it in others. But even under that doctrine of "charg-

ing" it is expressly held that it is unnecessary that the assent of the husband should be signified by a separate clause. "His execution of the paper jointly with his wife is a sufficient compliance with the law." *Jones v. Craigmiles,* 114 N. C., 613. Here, the husband not only ordered the goods as agent of his wife, but joins in the letter an appeal to his own personal standing, as a reason for the shipment.

The complaint is specific and complies with the requirement of *Bates v. Sultan.* The wife admits she got the goods and of the value charged. She got them on an order written by her husband as her agent, and he signs his name, and refers to himself as "he" and "I," and "the writer," and insists upon the shipment of the goods. If this is his "written consent," then under sec. 1826 of The Code the contract is valid and binding on the wife, and in holding that no recovery could be had against her, nor against either her personal or real property, there was error.

The Judge should not have taken the case from the jury, but should have left it to them with appropriate instructions upon the disputed issues of fact.

New trial.

FAIRCLOTH, C. J., dissents.