BALL v. PAQUIN.

(Filed November 28, 1905).

*Contracts of Married Women—Liability of Their Separate Real Estate—Liens for Labor and Material—Demurrers.*

1. A demurrer that does not specify wherein the complaint fails to state facts sufficient to constitute a cause of action, is general and is not allowable.

2. A demurrer, on the ground that the *feme* defendant was a married woman, was properly overruled, where it does not appear, on the face of the complaint, that she was a married woman at the date of the contract or the commencement of the action.

3. A contract to pay for labor and material contracted for a dwelling on the wife's land (describing it) signed by husband and wife, acknowledged by them, and with privy examination of the wife, is binding upon her separate real estate under section 1826 of The Code by necessary implication, though she does not expressly charge it upon her estate.

4. By construing section 6 in connection with section 3 of Article X of the Constitution, and section 1826 in connection with section 1781 of The Code, a lien is given upon the property of a married woman for all debts contracted for work and labor done.

5. Discussion of the powers and rights of married women in respect to their property and contracts, with a criticism of *dicta* in certain of the decisions.

ACTION by Leroy Ball and another against Paul Paquin and wife, heard by *Judge M. H. Justice* and a jury, at the September Term, 1904, of the Superior Court of BUNCOMBE.

The plaintiffs allege that the *feme* defendant, Hannah B. Paquin, was on or before October 15, 1900, the owner of a lot in the city of Asheville, on Haywood street, known as the "Coffin lot;" that she and the male defendant had begun the erection of a house on the lot to be used as a residence, to be fitted up with lavatories and equipped with a steam-heat-

ing apparatus and a number of tubs for both hot and cold baths; that said residence is known as "The Halthenon;" that on October 15, 1900, the defendants entered into a contract with the plaintiffs, whereby the plaintiffs were to complete certain plumbing in the building. The terms upon which the work was to be done are set forth and the defendants "agree that upon completion of the work in a good workmanlike condition, they will pay to the said parties of the second part the contract price for the same, as hereinbefore set forth."

The plaintiffs were permitted to amend in this court by alleging that said contract was in writing and was executed according to law, and that a charge and lien were created thereby on the land upon which the building was being erected. They allege that the work was performed and the materials furnished by them in accordance with the contract; that defendants made payments on the contract price, leaving due thereon at the time this action was instituted the sum of $1,337.04; that prior to the commencement of this action, the plaintiffs filed a lien on the lot and building, in the office of the clerk of the Superior Court, in accordance with the Constitution and laws of the State, a copy of the lien is attached to the complaint. They demanded judgment for the balance due and the enforcement of the lien.

Defendants answered, saying that they had no knowledge or information, sufficient to form a belief as to the allegation in regard to the partnership of plaintiffs; that the male defendant had no interest in the real estate other than as husband of the *feme* defendant. They deny the other material allegations of the complaint and for a further defense say that the defendant, Paul B. Paquin, entered into the contract with the plaintiffs by which they were to do "the plumbing on the building which was being erected on the property of the defendant, Hannah B. Paquin, on Hay-

wood street." They allege that the work was not done according to the contract, and that by reason of the failure to do so the defendants have sustained damage, etc., demanding judgment against the plaintiffs for $443, amount overpaid, and $1,000 damages sustained by the defendants. The plaintiffs filed a reply to the counterclaim. The pleadings are verified.

The defendants upon the opening of the cause demurred *ore tenus* to the complaint for that it did not set forth facts sufficient to constitute a cause of action. His Honor reserved the question raised by the demurrer and submitted a series of issues to the jury, presenting the controverted questions of fact. The defendants tendered the general issues, which His Honor declined to submit, and they excepted. The jury found upon the issues that the plaintiffs furnished, after October 15, 1900, material and labor on the building, the cost price and value of which was $1,222.39; and that the defendants were entitled to recover $50 on their counterclaim. From a judgment on the verdict, the defendants appealed.

*Tucker & Murphy* for the plaintiffs.
*Merrick & Barnard* for the defendants.

CONNOR, J., after stating the facts: The demurrer is general in that it does not specify wherein the complaint fails to state facts sufficient to constitute a cause of action. This, under The Code practice, is not allowable. His Honor could have overruled it for that cause. *Elam v. Barnes,* 110 N. C., 73. We assume, however, that the real ground of the demurrer was that the *feme* defendant was a married woman. *Baker v. Garris,* 108 N. C., 218.

The difficulty encountered by the defendant is that it does not appear, on the face of the complaint, that she was a married woman at the date of the contract or the commencement

BALL *v.* PAQUIN.

of the action.   The pleaders appear to have carefully avoided this allegation.   His Honor properly overruled the demurrer.

The *feme* defendant does not plead her coverture, nor does it appear by the answer that she is *covert,* except that the male defendant informs the court that nothing can be made out of him because he has no interest in the dwelling house and lot, save as the husband of the *feme* defendant. He says, however, that he alone contracted for the work on the house which the written contract declares was being erected, "by the said Hannah B. Paquin." How all of this is we do not know, except as the jury have found.

The plaintiffs put the contract of October 15 in evidence by which it appears that they had theretofore furnished some material and done some work for the defendants on the dwelling on the lot of the *feme* defendant "in the city of Asheville, on Haywood street, known as the 'Coffin Lot,' " being erected by the said Hannah B. Paquin.   The terms upon which the balance of the work is to be done and material furnished are set forth, and the defendants promise to pay promptly the amount due on the contract.   It is signed by the defendants, acknowledged by them, and the private examination of the *feme* defendant taken and certified by a notary public in the manner and form prescribed for executing deeds of conveyance of real estate.   The jury have found that there is due the plaintiff for material furnished and work done on the dwelling, since the execution of the contract, the sum of $1,337.   In this court the plaintiffs were permitted to amend the complaint to correspond with the proof.

The defendants contend that they may have, use and enjoy the labor and material furnished, by which the dwelling is supplied with lavatories, hot and cold baths, and pay nothing for it; that the right to do all of this is secured to them by the Constitution and laws of this State, because the property is the separate estate of the *feme* defendant.   If this con-

tention is correct, it would seem that our Constitution and laws are sadly in need of radical amendment.

The appeal renders it necessary to examine the statutory law and decisions of this court relied upon to sustain the defendant's exception to the judgment. It would serve no good purpose to review the numerous cases which have been before this court, in which creditors have endeavored to collect debts from married women. The construction of the Constitution and laws has received the most anxious and careful consideration of the judges who have sat upon this bench. We find that the same effort has been made in England and in many of the States of the Union to break away from the common law conception of the status of married women, in regard to their property rights and contractual capacity. An interesting history of the course of parliamentary and judicial thought and action on the subject is given by Professor Dicey in "Law and Opinion in England," 369 ; Pomeroy's Eq., section 1098, *et seq.* (3 Ed.), Mr. Bishop, volume 1, section 847, says: "That since the confusion of tongues in the Tower of Babel, there has been nothing more noteworthy in the same line than the discordant and ever shifting utterances of the judicial mind on the subject." *Flaum v. Wallace,* 103 N. C., 306. It is but natural and not to be regretted that under our system of jurisprudence, in which, by the operation of three agencies, legal fiction, equity and legislation, the law is brought into harmony with society (Maine Anc. Law), the movement is slow and at times unsatisfactory. In no court in this country was the common law conception of the marital relation, with all of its incidents, more clearly and tenaciously retained than in ours. Prior to 1848 we find no statute interfering with or limiting the common law right and power of the husband over his wife's property. In respect to dower, the law was so changed that the husband could sell his land without her consent and deprive her of

"her third." This was changed by the Act of 1866-'67 and dower as at common law restored.

It is therefore not unnatural that when, by the Constitution of 1868, an entirely new theory was adopted by which it is declared that "the real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may after marriage become in any manner entitled, shall be and remain the sole and separate estate and property of such female," etc. (Const., Art. X, sec. 6), the court should have moved with caution in giving it operation.

It would seem that this language carries with it, as an essential attribute of ownership of the wife, the power to deal with and make contracts in regard to such property, except as expressly restricted by the same instrument, as a *feme sole.* This was clearly intimated in *Withers v. Sparrow,* 66 N. C., 129. That expression was doubtless taken as an indication that this court would so hold, when the question was fairly presented. At the session of 1868-'69 we find no legislation upon the subject of married women. The effect of the holding, as foreshadowed in *Withers v. Sparrow, supra,* would have been to adopt the English and New York doctrine, by which a married woman could contract with respect to her separate estate as a *feme sole.* At the session of 1871-'72, chapter 193, an act was passed "concerning marriages, marriage settlements and the contracts of married women." The act is comprehensive in its scope and evidently drawn with care. The subject matter, as published in the Public Laws of 1871-'72, is classified under "headings," the third being, "What contracts a married woman may make with strangers." Section 17 (being section 1826 of The Code). "No woman during her coverture shall be capable of making any contract to affect her real or personal estate, except for her necessary personal expenses or the support of her family, or such as may be necessary

in order to pay her debts existing before marriage, without the written consent of her husband, unless she be a free trader, as hereinafter allowed." It would seem that the Legislature enacted this statute with full recognition of the radical change made by the Constitution, and the clear suggestion by the court that the power to contract, as a *feme sole,* was conferred as a necessary incident to the power to own property "as if unmarried." It was not supposed that the words "devise" and "with the written assent of the husband convey," used in the Constitution, referred to her power to enter into executory contracts. For the purpose of throwing around her the protection of her husband's counsel and advice, the Legislature declared that, with certain exceptions, she should not contract "without the written consent of her husband." In the absence of controlling decisions to the contrary, we should unanimously hold that she could make all manner of contracts with the written assent of her husband, and that for breach of them her property was liable as if she were a *feme sole.* The cases which came to this court during the years 1868-1876 clearly indicate that such was the construction of the statute by the profession and laymen.

The first case is *Harris v. Jenkins,* 72 N. C., 183 (1875). The *feme* plaintiff signed a sheriff's bond as security without the written assent of her husband. The case came clearly within the words of the Act of 1871-'72, and the court did not hesitate to hold that she was not bound.

*Pippen v. Wesson,* 74 N. C., 437 (1876), presented the question for the first time, whether under the Constitution and the Act of 1871-'72 a married woman could, with the written assent of her husband, enter into an executory contract for breach of which she could be sued to judgment, and her property subjected to sale under final process. It will be noted that the statute uses the word "contract." There is no suggesstion therein of any other form of obliga-

tion or remedy for breach thereof. This court held that no power to enter into an executory contract was conferred by the Constitution or statute on a married woman; that the only change made in her contractual capacity was that her separate estate, formerly called her equitable separate estate and property secured by the intervention of a trustee, was by the Constitution made her statutory separate estate, her husband occupying the position of trustee; that the only way in which such separate estate or property could be subjected to her engagements, even with the written assent of her husband, was by a specific charge or by showing a beneficial consideration; and that thereby her separate estate was charged with her obligations, not upon the theory that she had contracted a debt, but that her engagement, thus made, constituted a charge which the courts of equity had theretofore enforced.

It is not our purpose to do more than say that this decision was based upon the view that neither the Constitution nor the statute enlarged her common law contractual capacity, and that the statute was disabling rather than enabling in its provisions, except as to the class specified. Whatever, in the light of thought and experience of thirty years, may be said of this decision, it became the accepted law of this State, and its fundamental principle with some modification, has been followed. A number of important and disturbing results have flown from it. A constant struggle has been going on to find some adjustment of the law to the inevitable result of the radical change made by the Constitution. Married women today are the owners of property, both real and personal, worth millions of dollars. They employ tenants and croppers and cultivate thousands of farms, engage in merchandise, conduct hotels, boarding houses and almost every kind of business suited and sometimes unsuited to their mental and physical capacity. The largest possible powers have been conferred upon them in

respect to the control of their property, as in *Manning v. Manning,* 79 N. C., 293, and many other cases. It has been found by an experience of thirty years that the most unexpected and often startling results have come from this condition. As a matter of every day experience, we know that a very large portion of the industrial and commercial life of the State is under the control and subject to their judgment and opinion. It is possible that nine-tenths of the contracts entered into by them are not enforcible in the courts.

In *Harvey v. Johnson,* 133 N. C., 352, upon a review of, and in accordance with all former decisions, this court held that a note executed by husband and wife, charging her separate estate, is sufficient to bind her separate personal property; that in the absence of a privy examination it did not bind her separate real estate. In that case it appeared that the consideration enured to the benefit of her estate.

In *Flaum v. Wallace, supra,* such a note was held binding on her separate personal estate, although not for her benefit. This court took one step forward in the enfranchisement of married women by holding, in a well considered opinion, in *Vann v. Edwards,* 135 N. C., 661, that the restriction upon her right to convey her land, requiring the written assent of her husband, did not apply to her separate personal estate; hence, it is now the law of this State that she can sell and transfer her personal property as a *feme sole.*

It is unnecessary to make further reference to the numerous decisions of the court in which her power to deal with her separate personal estate is discussed. *Flaum v. Wallace* and *Vann v. Edwards, supra,* settle her rights in this respect.

It is said, however, that a different principle obtains when it is sought to subject her separate real estate to her contractual obligations. While expressions had been used by some of the judges indicating an opinion that she could do so only by a contract executed with the formalities pre-

scribed for the conveyance of her land, no *decision* was made
to that effect until 1890, when the question underwent a
careful and thorough consideration in *Farthing v. Shields,*
106 N. C., 289. There, *Mr. Justice Shepherd,* referring
to *Flaum v. Wallace,* said: "We were greatly influenced in
so holding because of the power of the wife to absolutely dis-
pose of her statutory separate personal estate by the simple
assent of her husband, and we deemed it but reasonable that
if she could so absolutely dispose of such property, she might
exercise the lesser power of charging it, either expressly or
by necessary implication. But when we come to the statu-
tory separate *real* estate, the foregoing reason fails, because
under our statute law, the wife and husband cannot dispose
of such property unless the former has been privately exam-
ined, separate and apart from her husband." The learned
justice concludes that the power to charge her separate
estate is measured by her power to dispose of the same;
hence, if she had expressly charged the debt in that case
with the written assent of her husband, "it would have been
of no avail without privy examination." In further dis-
cussing the law he says that the lands of a married woman
cannot be charged by any undertaking on her part "unless
it be evidenced by deed with privy examination." This,
for the reason that she will not be permitted to do indirectly
what she cannot do directly. *Scott v. Battle,* 85 N. C., 184.
Similar expressions are used in *Thurber v. LaRoque,* 105
N. C., 301; *Williams v. Walker,* 111 N. C., 604; *Loan
Asso. v. Black,* 119 N. C., 327; *Bank v. Fries,* 121, N. C.,
241. In *Weathers v. Borders,* 121 N. C., 387, the con-
tract was not in writing and of course there was no privy
examination. The expression that she could only charge
her real estate by "a regular conveyance executed as required
by the statute," etc., was not necessary to the decision of
the case and, as we have seen, is not required by any *decision*
of this court. When the question came directly before the

court, it was said that the cases did not hold it to be neccs-
sary that a mortgage should be executed. *Banks v. Ire-
land,* 122 N. C., 571.

It will be found in all these cases that the question whether
it was necessary that the form of the contract should be a
conveyance, was not presented. It is evident that the judges
were referring to the formalities with which such contracts
should be executed. In *Bank v. Howell,* 118 N. C., 271, it
is said that she cannot charge her separate real estate "except
upon privy examination." In *Bank v. Ireland,* 122 N. C.,
571, the present *Chief Justice,* writing in that respect for a
unanimous court, referring to *Farthing v. Shields, supra,* and
other cases, said: "Those decisions do not require that the
charge shall be made by mortgage." In so far as it was
intimated that no privy examination was necessary, the then
chief justice and other justices did not concur.

The conclusion is irresistible that where the contract has
all of the elements required by the statute and is reduced to
writing, assented to by the husband, and the wife is privately
examined separate and apart from her husband, it is binding
upon her separate real estate. In this record we have such a
contract, executed with all the formalities required for convey-
ing the property, describing it with sufficient certainty to con-
vey, the consideration clearly set forth, admittedly for the im-
provement of her separate real estate. Why is such estate not
bound for the breach of her express contract, by necessary
implication? It is true that she does not expressly charge
it upon either real or personal estate, but she refers to her
separate real estate, describing it as her property, and stat-
ing that she is erecting a dwelling thereon, and that the work
and material contracted for are for such dwelling. Lan-
guage not so strong was held in *Bates v. Sultan,* 117 N. C., 94,
sufficient to charge her personal estate. *Brinkley v. Ballance,*
126 N. C., 393.

The decisions, while not in all respects harmonious, indi-

cate a movement of the court towards bringing the law in this respect into harmony with our social, industrial and commercial conditions. The Legislature has to some extent responded to this demand. In so far as it is within our province to do so, we desire to express our opinion that it is desirable that the Legislature simplify the subject by giving to married women full power to enter into executory contracts, binding their property, real and personal, "as if unmarried"—removing all doubt and uncertainty either as to the form of the contract, its execution, or remedy for breach.

How far they should be restricted or protected by requiring the assent of the husband is worthy of the most careful consideration. It is manifest that the court, in its desire to so construe the statute as to prevent injustice and wrong, has been hampered by the early decisions made when we were passing from the old into the new conception of the status of married women, in respect to their rights of property and power to contract. The wisdom of the experiment was seriously doubted by many of our wisest men, both lawyers and laymen. It was probably well, when confronted with two cases in which married women had signed bonds as security, that the court should move cautiously.

We do not feel at liberty, nor is it necessary in this case, to overrule any of the *decisions* made in this court upon the subject. This, with the exception of *Bank v. Ireland, supra,* is the first case in which an executory contract was executed by the wife with privy examination. She was held liable there, because there was an express charge. In this case, in which the contract is executed with privy examination, we hold that she is liable upon an implied charge upon the separate real estate. We have not overlooked *Daugherty v. Sprinkle,* 88 N. C., 300, nor *Thompson v. Taylor,* 110 N. C., 70. In neither of these cases was there any express contract by the married woman.

We are of the opinion and so hold that upon the pleadings

and contract, His Honor correctly held that the separate real estate of the *feme* defendant was bound for the amount found to be due by the jury. The plaintiffs are entitled to enforce their lien on her property. This court in *Thompson v. Taylor, supra,* said that the lien, given by the Constitution and statute for work and labor done and material furnished, was predicated upon a valid contract, and, as a married woman had no capacity to make such a contract, her property could not be subjected to such lien. This was not the point in the case. The *feme covert* had not made any contract, either express or implied. In *Smaw v. Cohen,* 95 N. C., 85, it was held that an action against a married woman to enforce a lien for an amount less than $200 was within the jurisdiction of a justice of the peace. This court, as we construe the opinion, did not pass upon the validity of the contract. *Mr. Justice Shepherd,* in *Farthing v. Shields, supra,* intimated that the lien could be enforced upon a simple contract by the married woman because of the lien law. However this may be, we are of the opinion that by construing section 6 in connection with section 3 of Article X of the Constitution, and section 1826 in connection with section 1781 of The Code, the conclusion is sustained that for all debts contracted for work and labor done, a lien is given upon the property of a married woman.

It is true that the lien is given for the amount due upon debts contracted. In this connection it is permissible to give the term "contracted" the larger meaning—agreed to be paid—thereby giving a highly remedial statute an operation commensurate with its purpose. The provisions for the mechanic's and laborer's lien and for securing to the married woman her property, are found in the same article of the Constitution. In this case, the principle *noscitur a sociis* is invoked to ascertain the intention of the law maker. Sutherland Const. Stat., section 414, *et seq.* It has been held by many courts that when a married woman was empowered to

contract for the benefit of her separate estate, the lien for debts contracted for that purpose attaches. Boisot Mech. Liens, section 271; Philips.on Mechanic's Liens, section 96; *Carthage M. & W. Co. v. Baumann,* 44 Mo. App., 386. In *Stephenson v. Ballard,* 82 Ind., 87, it is held that a statute forbidding a married woman to encumber her separate estate, except by deed with her husband, must be so construed in connection with another statute giving a mechanic's lien as to give effect to the latter. *Greenough v. Wigginton,* 11 Iowa, 435; Appeal *Germania Savings Bank,* 95 Pa. St., 329; *Kuhas v. Turney,* 87 Pa. St., 497. However this may be, the Act of 1901, chapter 617, expressly extends the lien law to the property of married women. It has been sustained in *Finger v. Hunter,* 130 N. C., 529.

We think that in the light of the authorities and upon the reason of the thing, the judgment can be sustained upon either view, that under the Act of 1871-'72 (Code, section 1826), the *feme* defendant is liable, and that upon a proper construction of the lien law, she is equally so.

We have examined the exceptions in the record to rulings of His Honor during the trial and do not find any error. We have taken this case under advisement from the last term and given to it our most serious consideration. We hope that the subject of the powers and rights of married women in respect to their property and contracts, may attract the attention of the General Assembly and be brought into harmony with the best modern thought and conditions. The judgment must be

Affirmed.

CLARK, C. J., concurring: The Code, section 1826, expressly provides that a married woman can *contract* and thereby "affect" both her personal and real property, requiring only in some cases her husband's "written consent" and dispensing with it in others.

There is no need in this case to discuss the doctrine of "implied contracts," for here the wife made an express contract, and in writing, with the plaintiff to place these improvements upon her property. The statute does not require her privy examination, for this was not a conveyance of her property, but only a contract. Her privy examination, however, was in fact taken. The husband's written consent under The Code, section 1826, is amply evidenced by his joining in the contract. *Jones v. Craigmiles,* 114 N. C., 613.

The status of married women in North Carolina is very clearly stated in the Constitution and laws as written by the Convention and General Assembly and may be thus succinctly summed up:

*Property Rights:* The property, real and personal, of a married woman, whether acquired before or after marriage, "shall be and remain the sole and separate estate and property of such female." Const., Art. X, section 6.

*Right to Devise and Bequeath:* By the Constitution this right cannot be restricted.

*Conveyances:* The only restriction placed by the Constitution upon conveyances by the wife is that there must be "the written assent" of the husband. Const., Art. X, section 6. Her privy examination is required by the Constitution only as to a conveyance of homestead by the husband (Const., Art. X, section 8), not as to conveyances by her. The statute, Code, section 1256, requires her privy examination as to any conveyance of realty.

*Transfer of Personalty:* There is neither written assent of the husband nor privy examination required as to the disposal by sale, gift or otherwise, by a married woman of her personal property. *Vann v. Edwards,* 135 N. C., 661.

*Contracts:* There is in the Constitution no restriction upon the power of a married woman to contract, and as her property rights remain as if she were single, with power to devise and bequeath it, and to dispose of it by sale, gift or

140——7

otherwise, save that the "written assent" of the husband
is required as to conveyances of realty, it would seem it was
intended that she should be free to contract.   But The Code,
section 1826, provides that she can make any contract what-
ever "with the written consent" of her husband, though this
requirement of written consent is entirely dispensed with as
to contracts for her necessary personal expenses, or for sup-
port of the family, or to pay her ante-nuptial debts, or when
she is a free trader (Code, section 1830,) or lives separated
from her husband or is abandoned by him.   Code, sections
1831 and 1832.   To avoid palpable fraud the written con-
sent of the husband has further been dispensed with by chap-
ter 617, Laws 1901, in cases (like the present) where build-
ings are placed or repaired on the wife's land by her consent
or procurement.   *Finger v. Hunter,* 130 N. C., 529.

Such is the law as the lawmaking power has made it.   It
is plain and simple and reasonably abreast with the spirit
of the age, though in England, New York, and in most other
States, the statute law does not add (as we have done) to the
plain provisions of our Constitution a requirement of privy
examination as to conveyances of realty and of written con-
sent of the husband as to some contracts.   1 Am. & Eng. Enc.
(2 Ed.), 522.   In none of the States adjacent to us—Vir-
ginia, South Carolina, Georgia and Tennessee—is the privy
examination of the wife now required in any case whatever.
It is a useless and troublesome formality handed down from
the past and of most doubtful constitutionality under a Con-
stitution which requires only the written assent of the husband
to the wife's conveyances as the sole modification upon her
property rights, as a *feme sole,* and which expressly provides
that with such assent her property may be "conveyed by her as
if she were unmarried."   Const., Art. X, sec. 6.

By our Constitution and laws the status of married women
is thus very plain.   There is required by the Constitution only
the written assent of the husband to conveyances by the wife
and the statute requires privy examination of the wife only to

convey realty, and written consent of the husband as to the
wife's contracts, except those cases specified as to which the
written consent is dispensed with. That is all. Turning to 128
N. C., there will be found at pp. 431-435, in four pages of fine
type, the tables wherein Professor Mordecai has endeavored in
vain to draw some order out of the confusion caused by the
doctrine of "charging in equity." As was said by this court
in *Brinkley v. Ballance*, 126 N. C., 396, "An examination of
the Constitution, Article X, section 6, and of the statute
(Code, section 1826), shows no foundation for the 'charging'
the wife's property. The Constitution requires only the writ-
ten assent of the husband to 'conveyances' and section 1826
requires only 'the written consent' of the husband to contracts
affecting the wife's real or personal estate in certain cases, dis-
pensing with it in others." There is no statute which author-
izes or recognizes a *feme covert* "charging her property in
equity."

*The Statute (Code, section 1826,) requires no more as to
the contract of a married woman, in any case whatever, than
the "written consent" of the husband, and dispenses with
even that in many cases.* The courts should not require what
the law does not. As *Judge Daniel* well said, "The Court
cannot be wiser than the law." The sooner they are in har-
mony, the better.

Overruling the doctrine of "charging in equity," cannot
possibly affect any rule of property, for to do so will not affect
any title. It will not invalidate, but recognize as valid, con-
tracts when made as the law requires "with the written con-
sent of the husband." In this connection, my attention has
been called to the dissenting opinion in *Zachary v. Perry*,
130 N. C., 292. It is needless for me to say that no sort of
discourtesy was intended towards the distinguished justice
who wrote the opinion in *Flaum v. Wallace*. The phrase
"charge in equity" there used, was not a quotation from that
opinion.

BROWN, J., concurs in result.