MERCANTILE NATIONAL BANK v. MRS. L. J. BENBOW ET AL.

(Filed 25 May, 1909.)

1. Husband and Wife—Wife's Separate Personalty—Wife's Note—Consent of Husband—Charge Specific by Intendment.

A note signed by a *feme covert* alone, but with the written consent of her husband, will not bind her separate personal property to its payment when it does not expressly or by clear intendment and application create a specific charge against her property, sought to be bound for its payment.

2. Husband and Wife—Wife's Separate Realty—Wife's Note—Consent of Husband—Charge Specific—Equity—Privy Examination.

For a *feme covert* to bind her real property to the payment of a note given by her, she must execute a formal conveyance or some paper writing which in equity may be a charge upon her separate estate, accompanied by the written assent of her husband and her privy examination.

CLARK, C. J., dissenting, *arguendo.*

ACTION tried before *Murphy, J.,* and a jury, at October Term, 1908, of WILKES.

These issues were submitted:

1. "Is the *feme* defendant indebted to the plaintiff? And if so, in what sum?" Answer: "Yes; indebted $163.20, with interest from maturity."

2. "Were the acceptances sued on signed by the *feme* defendant by the written consent of her husband?" Answer: "Yes."

3. "Did the *feme* defendant own a separate personal estate at the time the acceptances were signed and suit brought? And if so, how much?" Answer: "Yes; from six hundred to eight hundred dollars."

4. "Did the *feme* defendant own a separate personal estate at the time of the trial? And if so, how much?" Answer: "Yes; $13,000."

His Honor rendered judgment against the *feme* defendant, Mrs. Benbow, upon the issues as found, directing that it be collected out of her personal estate only. The said defendant duly excepted and appealed.

*L. M. Lyon* and *Manly & Hendren* for plaintiff.
*C. G. Gilreath* and *H. C. Caviness* for defendant.

BROWN, J. The *feme* defendant was the owner of and conducting a store in the town of Wilkesboro. Through her husband she purchased certain jewelry from Bixler & Co. and, in payment therefor, executed six promissory notes, signed by herself alone, but with the written consent of her husband, which was found by the jury to have been given in certain letters appearing in the record. These notes or acceptances were assigned to the plaintiff for value and before maturity.

The complaint declares upon the notes, and asks for a judgment against the *feme* defendant only. The male defendant is a nominal party, no relief being asked against him.

The form of all the notes is the same, to wit:

"CLEVELAND, Ohio, 19 June, 1903.

"Two months after date pay to the order of M. F. Bixler & Co., limited, the sum of thirty-two dollars, without interest, at their office in Cleveland, Ohio.

"(Mrs.) L. S. BENBOW."

Appropriate prayers for instruction and exceptions present for our consideration the liability of the *feme* defendant upon the contract as herein set out.

There is no specific charge upon her personal estate contained in the evidence of debt, or any other paper writing executed in connection therewith, and there is nothing in the writing from which an intent to charge her separate estate may be implied.

That being so, we think the ruling of the court below contravenes the principles of law governing the executory contracts of married women as enunciated in numerous decisions of the Court since 1875, when the subject was first considered, in *Harris v. Jenkins,* 72 N. C., 183, and *Pippen v. Wesson,* 74 N. C., 437. From the adjudged cases covering a period of thirty years this rule of law may be deduced. In order that a married woman may make an executory contract enforcible against her personal estate it must be done with the written assent of her husband, and the contract must expressly or by clear intendment and implication create a specific charge against her personal estate. In order that she may bind her real property, the *feme covert* must execute either a formal conveyance or some paper writing which in equity may be charged upon her separate estate, accompanied by the written assent of her husband and her privy examination. An example of the latter is to be found in *Ball v. Paquin,* 140 N. C., 85.

In the *Pippen case* this Court held that neither the Constitution nor statute law of the State conferred upon a married woman any power to enter into an executory contract except in the specific instances mentioned in the statute, now section 2094 of the Revisal. Since that case, in a long unbroken line of decisions, this Court has held that a married woman is incapable of making a contract of any sort, and that her attempted contracts, unless such as are authorized by the statute, are void. These decisions have been repeated and reaffirmed so often by this Court that in *Ball v. Paquin, supra,* they are regarded by *Mr. Justice Connor* as "controlling decisions," who refers to them in these words: "In the absence of controlling decisions to the contrary, we should unanimously hold that she could make

all manner of·contracts with the written assent of her husband, and that for a breach of them her property was liable as if she were a *feme sole*."

This subject has been so much discussed in decisions of this Court that to review them again is unnecessary and unprofitable. Both sides of the controversy are presented fully in the opinion of the Court by *Mr. Justice Walker* and in the dissenting opinion of the Chief Justice in the case of *Harvey v. Johnson,* 133 N. C., p. 353.

There is no pretense of any express or implied charge in ·the contract sued on upon the personal estate of the *feme* defendant which can be enforced by a court of equity. Because the jury have found that the *feme* defendant owns a separate personal estate affords no ground for charging it with the performance of such contract.

Our laws provide in what manner married women may become free traders, so that their contracts may be enforced as readily as if they were unmarried. Their status is easily ascertained by reference to the register of deeds by those who deal with them in business. If they neglect to obtain such information, it is the loser's fault.

His Honor erred in declining to give the defendants' prayer for instruction. As there was no motion to nonsuit, there must be a

New Trial.

CLARK, C. J., dissenting: The most diligent research shows no statute that forbids a married woman to make a contract *"with* the assent" of her husband. The statute which has been relied on is The Code, 1826, now Revisal, 2094, which forbids her to make any contract *"without* the assent" of her husband, except in three cases, named, *i. e.,* for necessaries, for support of the family, and to pay antenuptial debts, for which she can contract *without* his assent. The prohibition to contract without the husband's assent in the other cases than the three cases named is certainly not a prohibition of the power to contract with his assent, but a recognition that she can contract *with* the husband's assent.

The right to act as free trader (Revisal, 2112) is a dispensation with the prohibition to contract *without* the husband's assent in all cases. As this is conferred by the husband's assent once for all, certainly he can give his assent to each contract as it arises.

The Constitution allows a woman to *convey* her land with the written assent of her husband, and the Court has often held that, as the assent is only required as to land, she can draw checks and dispose of personal property *without* his assent. It was so held in *Vann v. Edwards*, 135 N. C., 661. *A fortiori* can she contract *with* his assent.

A married woman can draw checks and drafts *without* her husband's assent, and, of course, is liable on them if not paid. Revisal, 2095. She is liable upon her real estate for buildings or repairs put thereon by her verbal assent or acquiescence *without* the assent of her husband., Revisal, 2016; *Finger v. Hunter*, 130 N. C., 529. Of course, she must be liable when the contract is made with his assent.

Ever since the Statute of Frauds (29 Chas. II.) it has been held that land can be conveyed only in writing. But it has never been held that in consequence one cannot make a contract verbally which could be enforced by a sale of land. But if such were the law, as a married woman can convey her land with the assent of her husband, certainly she can contract *with* his assent.

The courts have no right to enact a statute forbidding married women to contract with the assent of the husband. The Legislature has not done so. The Constitution has emancipated married women by giving them full control of their property and earnings, with the right to dispose of it by will or otherwise, save that as to conveyances of real estate there must be the written assent of the husband—in analogy to the joinder of the wife in the conveyance of the husband's realty.

That there is no prohibition of the wife to contract freely *with* the husband's assent is held in *Brinkley v. Ballance*, 126 N. C., 396, and *Bates v. Sultan*, 117 N. C., 100. There is no statute requiring "charging," and the Court has no power to enact it. It is against the spirit of the Constitution and in

150—50

violation of the enfranchised status of married women created by it. Every student of the history of the law knows that the doctrine of "charging" was created in England in an effort to confer upon married women of wealth the power to contract on the faith of their property, at a time when the law there did not, as now, give them unrestricted control of their property and freedom to contract even without the assent of their husbands. See *Century of Law Reform,* 354-358, 368-373, 376; *Dicey. Law and Opinion in England,* 369-393. Certainly, the doctrine is obsolete and an anachronism here, when the wife has contracted *with* the assent of her husband and she can convey her realty with his assent and all her other property without it.

If there are any decisions of this or preceding courts which forbid a married woman to contract *with* the assent of her husband, they should be modified or overruled. A court should overrule its own errors (as this Court has shown it is strong enough to do), as well as the errors of a court below. Indeed, errors of the higher court more imperiously demand correction, for they are more injurious. Ten times zero is only zero, and an error ten times repeated acquires thereby no approximation to being correct. It is an error still, only more harmful by repetition. As we have as precedent *Brinkley v. Ballance, supra,* we can follow that, if a precedent is essential.

The *feme* defendant bought the plaintiff's goods, at the price $163.20, with the written assent of her husband and, indeed, through his agency. She has kept the goods and now refuses to pay for them, though the jury find that she is worth $13,000 in personal property, besides realty. It is but common honesty that she be adjudged to pay the $289. There is no sign or shred of a statute that provides that she is not liable for such contract when made *with* the assent of her husband.

The decisions that a wife cannot contract with the assent of her husband, though she can convey realty with his assent, and can make many contracts and dispose of personalty without his assent, have not become a rule of property, and to correct the error cannot affect any title. As the husband's assent is not required for her protection in disposing of her personalty, and such assent is sufficient protection in conveying her realty, there

can be no reason why the husband's assent was not enough protection in purchasing these goods when there is no statute that requires more.

In *Bank v. Howell,* 118 N. C., 273, this Court, in effect, recommended a statute permitting a wife to contract as a *feme sole, without* the assent of her husband in all cases, as is the law in England, New York, and our adjoining States. But that would require amending Revisal, 2094, which forbids her to contract without her husband's consent except in certain cases. Here she contracted *with* the assent of her husband, and there is no statute making her incompetent to buy these articles. Her estate has benefited to the extent of the jewelry bought. ·